**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LUCKY'S MARKET PARENT COMPANY, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10166 (JTD)<br><br>(Joint Administration Pending) |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE
AUTOMATIC STAY, (IV) SETTING A FINAL HEARING, AND
(V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby move (the "**Motion**") for entry of an interim order, substantially in the form attached hereto as Exhibit A (the "**Proposed Interim Order**"), pursuant to sections 105, 361, 362, 363, 506, 507, and 552(b) of title 11 of the United States Code (the "**Bankruptcy Code**"); Rules 2002, 4001, 6004(h), 7062 and 9014 of Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"); and Rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (i) authorizing the Debtors to use the "**Cash Collateral**," as defined in Bankruptcy Code section 363(a), of the Prepetition Secured Lender (as defined below); (ii) providing adequate protection to the Prepetition Secured Lender on the terms set forth in the Interim Order; (iii) modifying the automatic stay; and (iv) scheduling a final

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Lucky's Market Parent Company, LLC (2055), Lucky's Farmers Market Holding Company, LLC (5480), Lucky's Market Operating Company, LLC (7064), LFM Stores LLC (3114), Lucky's Farmers Market, LP (0828), Lucky's Farmers Market Resource Center, LLC (7711), Lucky's Market Holding Company 2, LLC (0607), Lucky's Market GP 2, LLC (9335), Lucky's Market 2, LP (8384), Lucky's Market of Longmont, LLC (9789), Lucky's Farmers Market of Billings, LLC (8088), Lucky's Farmers Markets of Columbus, LLC (3379), Lucky's Farmers Market of Rock Hill, LLC (3386), LFM Jackson, LLC (8300), Lucky's Farmers Market of Ann Arbor, LLC (4067), Lucky's Market of Gainesville, LLC (7877), Lucky's Market of Bloomington, LLC (3944), Lucky's Market of Plantation, LLC (4356), Lucky's Market of Savannah, GA, LLC (1097), Lucky's Market of Traverse, City, LLC (2033), Lucky's Market of Naples, FL, LLC (8700), and Sinoc, Inc. (0723).

72094271.3

hearing on the Motion and approving the form and notice of notice thereof. In support of the Motion, the Debtors rely upon the *Declaration of Andrew T. Pillari, Chief Financial Officer of Debtors, in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**") filed contemporaneously herewith. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Under Local Rule 9013-1(f), the Debtors consent to entry of a final order under Article III of the United States Constitution. Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 361, 362, 363, 506, 507, and 552(b), Bankruptcy Rules 2002, 4001, 6004(h), 7062 and 9014, and Local Rules 2002-1(b), 4001-2, and 9013-1(m).

## BACKGROUND

**I.    General Background**

3. On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration and fully incorporated herein by reference.

4. The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

## II. Prepetition Debt Structure

5. On or about September 15, 2016, Lucky's Market Parent Company, LLC ("**LMPC**") and The Kroger Co., as lender (the "**Prepetition Secured Lender**"), entered into that certain Promissory Note (as amended prior to the date hereof, the "**A Note**"), pursuant to which the Prepetition Secured Lender agreed to lend LMPC up to $23,328,810 (the "**A Prepetition Secured Loan**").

6. On or about August 9, 2017, the Prepetition Secured Lender, entered into that certain Secured Loan Agreement (the "**B Prepetition Loan Agreement**"), pursuant to which the Prepetition Secured Lender agreed to lend LMPC up to $25,177,640 (the "**B Prepetition Secured Loan**").

7. The B Prepetition Secured Loan is evidenced by that certain Promissory Note dated August 9, 2017 made by LMPC in favor of the Prepetition Secured Lender (as amended prior to the date hereof, the "**B Note**").

8. To secure the obligations under the A Note and B Prepetition Loan Agreement, LMPC and the Prepetition Secured Lender entered into that certain Security Agreement dated as of August 9, 2017 (the "**AB Security Agreement**"). Pursuant to the AB Security Agreement, LMPC assigned and granted to the Prepetition Secured Lender, a continuing lien on and security interest in substantially all of LMPC's personal property with respect to certain identified store locations (the "**AB Security Agreement Collateral**").

9. The obligations of LMPC under the A Note and B Prepetition Loan Agreement are guaranteed by Debtor Lucky's Market Operating Company, LLC ("**LMOC**" and together

3

with LMPC, the "**Prepetition Secured Credit Parties**") pursuant to that certain Guaranty dated as of August 9, 2017 between LMOC and the Prepetition Secured Lender (the "**AB Guaranty**"). To secure the obligations of LMOC under the AB Guaranty, LMOC and the Prepetition Secured Lender entered into that certain Guaranty Security Agreement dated as of August 9, 2017 between LMOC and the Prepetition Secured Lender (the "**AB Guaranty Security Agreement**"). Pursuant to the AB Guaranty Security Agreement, LMOC assigned and granted to the Prepetition Secured Lender, a continuing lien on and security interest in substantially all of LMOC's personal property with respect to certain identified store locations (the "**AB Guarantor Collateral**").

10.    On or about December 4, 2017, LMPC, as borrower, and the Prepetition Secured Lender entered into that certain Secured Loan Agreement (as amended, the "**C Prepetition Loan Agreement**" and together with the B Prepetition Loan Agreement, the "**Prepetition Loan Agreements**"), pursuant to which the Prepetition Secured Lender agreed to make loans to LMPC (the "**C Prepetition Secured Loan**" and together with the A Prepetition Secured Loan and the B Prepetition Secured Loan, the "**Prepetition Secured Loan**").  The Prepetition Secured Lender entered into agreements subsequently to, among other things, lend LMPC additional amounts over time.[2]

11.    The C Prepetition Secured Loan is evidenced by that certain Amended and Restated Promissory Note dated December 31, 2019 made by LMPC in favor of the Prepetition

---

[2] Loan Modification Agreements were dated February 23, 2018, July 2, 2018, September 21, 2018, November 15, 2018, January 28, 2019, February 6, 2019, February 13, 2019, February 20, 2019, February 27, 2019, March 6, 2019, March 13, 2019, March 20, 2019, March 27, 2019, April 2, 2019, April 10, 2019, April 16, 2019, April 23, 2019, April 30, 2019, May 7, 2019, May 14, 2019, May 21, 2019, May 28, 2019, June 4, 2019, June 11, 2019, June 18, 2019, June 25, 2019, July 2, 2019, July 9, 2019, July 16, 2019, July 23, 2019, July 30, 2019, August 6, 2019, August 13, 2019, August 20, 2019, August 27, 2019, September 3, 2019, September 10, 2019, September 17, 2019, September 24, 2019, October 1, 2019, October 8, 2019, October 15, 2019, October 22, 2019, October 30, 2019, November 5, 2019, November 12, 2019, November 19, 2019, November 26, 2019, December 3, 2019, December 10, 2019, December 17, 2019, December 24, 2019, and December 31, 2019.

72094271.3

Secured Lender (as amended by prior to the date hereof, the "**C Note**" and together with the A Note and B Note, the "**Notes**").

12. To secure the obligations under the C Prepetition Loan Agreement, LMPC and the Prepetition Secured Lender entered into that certain Security Agreement dated as of December 4, 2017 (the "**C Security Agreement**" and together with the AB Security Agreement, the "**Security Agreements**"). Pursuant to the C Security Agreement, LMPC assigned and granted to the Prepetition Secured Lender, a continuing lien on and security interest in substantially all of LMPC's personal property (the "**C Security Agreement Collateral**" and together with the AB Security Agreement Collateral, the "**Borrower Collateral**").

13. The obligations of LMPC under the C Prepetition Loan Agreement are guaranteed by LMOC pursuant to that certain Guaranty dated as of December 4, 2017 between LMOC and the Prepetition Secured Lender (the "**C Guaranty**" and together with the AB Guaranty, the "**Guaranties**"). To secure the obligations of LMOC under the C Guaranty, LMOC and the Prepetition Secured Lender entered into that certain Guaranty Security Agreement dated as of December 4, 2017 between LMOC and the Prepetition Secured Lender (the "**C Guaranty Security Agreement**", and together with the AB Guaranty Security Agreement, the "**Guaranty Security Agreements**"). Pursuant to the C Guaranty Security Agreement, LMOC assigned and granted to the Prepetition Secured Lender, a continuing lien on and security interest in substantially all of LMOC's personal property (the "**C Guarantor Collateral**" and together with the AB Guarantor Collateral and the Borrower Collateral, the "**Prepetition Collateral**"). The Guaranty Security Agreements together with the Prepetition Loan Agreements, the Notes, the Security Agreements, the Guaranties, and all other documents, instruments, related writings, financing statements, security documents, and guarantees executed in connection therewith, as

5

72094271.3

each has been and may in the future be amended, restated, or replaced, the "**Prepetition Secured Loan Documents**" and the obligations thereunder, the "**Prepetition Secured Loan Obligations**".

14. As of the Petition Date, the Prepetition Secured Credit Parties were indebted and liable to the Prepetition Secured Lender (a) in the aggregate principal amount of $301,156,450, plus (b) interest accrued (before and after the Petition Date) and unpaid thereon, fees and expenses (before and after the Petition Date), reimbursement obligations, increased costs, tax gross-ups, breakage costs, indemnities, costs, and all other obligations payable under the Prepetition Secured Loan Documents, including any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable or reimbursable under the Prepetition Secured Loan Documents (clauses (a) and (b) together, the "**Prepetition Indebtedness**").

### III. The Debtors' Need for the Use of Cash Collateral

15. As described in the First Day Declaration, based on performance of the Debtors' business, the Debtors' management determined that it would require approximately $100 million in incremental funding to continue operations until the Debtors would be cash flow positive. Management determined that it would be unable to secure new sources of sufficient funding outside of these chapter 11 cases.

16. The Debtors have an immediate and critical need for the use of Cash Collateral. Access to the use of Cash Collateral will allow the Debtors to retain employees to continue the liquidation of certain of their Stores and pursue sales processes, which the Debtors believe will preserve and maximize the value of the estates. The Debtors have determined that absent the use of Cash Collateral, the Debtors will be unable to continue (i) operations of their businesses, (ii) the ongoing liquidation of certain of their assets, and (iii) the sales processes during the Chapter

11 Cases, which will irreparably harm the Debtors' estates and creditors. The Debtors' ongoing obligations include obligations to pay wages to employees and amounts due and owing to vendors.

17. In exchange for the consensual use of Cash Collateral, the Debtors have agreed, and the Interim Order provides, adequate protection in the form of, among other things, adequate protection liens, and superpriority claims to protect the Prepetition Secured Lender against any diminution in the value of their interests in the Cash Collateral resulting from the use, sale, or lease of the Cash Collateral, the subordination of the Prepetition Secured Lender's liens to the Carve-Out (as defined in the Interim Order), and the imposition of the automatic stay.

18. At this time, the Debtors do not contemplate the need for postpetition financing. Instead, the Debtors intend to operate their businesses solely on the use of the existing Cash Collateral generated from the liquidation of their stores. Access to existing Cash Collateral on an interim basis will provide the Debtors with the liquidity necessary to ensure that the Debtors have sufficient working capital and liquidity to continue operating and continue the liquidation and sales processes. Without access to Cash Collateral, the Debtors will face irreparable harm.

## RELIEF REQUESTED

19. The Debtors respectfully request entry of the Interim and Final Orders, pursuant to Bankruptcy Code sections 105, 361, 362, 363, 506, 507, and 552(b) and Bankruptcy Rules 2002, 4001, 6004(h), 7062 and 9014, (i) authorizing the Debtors to use the Cash Collateral, (ii) granting the Prepetition Secured Lender adequate protection upon the terms set forth in the Interim Order and in any final orders, (iii) modifying the automatic stay, and (iv) scheduling a final hearing on the Motion.

72094271.3

20.     Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the following are the principal terms of the Proposed Interim Order:[3]

| Required Disclosure | Summary of Material Term |
|---|---|
| **Parties with an Interest in Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(i) | The Prepetition Secured Lender. |
| **Purposes for the Use of Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii) | All Cash Collateral and all proceeds of the Prepetition Collateral and the Adequate Protection Collateral, shall only be used for: (i) working capital; (ii) administrative costs and expenses incurred by the Debtors in selling the Debtors' assets pursuant to section 363 of the Bankruptcy Code; (iii) costs and expenses incurred by the Debtors in closing certain of the Debtors' stores and/or assuming, assuming and assigning, or rejecting leases to which the Debtors are party upon authorization of the Court; and (iv) the satisfaction of the costs and expenses of administering the Cases, including, without limitation, payment of any prepetition obligations that are necessary to preserve the value of the Debtors' estates to the extent approved by the Court; and for no other purpose, and shall only be used and/or applied in accordance with the terms and conditions of the Interim Order, including, without limitation, the Budget (subject to any Permitted Variance). |
| **Budget**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii) | No later than the Monday following the Petition Date, the Debtors shall deliver to the Prepetition Secured Lender and its counsel, a cash flow forecast of the cash receipts and disbursements of the Debtors on a consolidated basis for the following 13-week period (the "Initial Postpetition Budget" and "Proposed Budget"), which shall be in form and substance reasonably satisfactory to the Prepetition Secured Lender. If no objection to the Proposed Budget is received by the Debtors from the Prepetition Secured Lender within three (3) business days of receipt thereof (such period, the "Budget Objection Period"), then upon expiration of the Budget Objection Period, the Proposed Budget shall become the Budget, which will be in effect for two calendar weeks; provided that, in the event the Prepetition Secured Lender objects to the Proposed Budget during the Budget Objection Period, then the Budget in effect immediately prior to the distribution by the Debtors of the Proposed Budget shall continue to be in effect until any such objection is resolved. Following the receipt of the Initial Postpetition Budget, an updated cash flow forecast shall be delivered to the Prepetition Secured Lender on Monday, every two weeks thereafter.<br><br>No later than the [Thursday] of each calendar week commencing on the first [Thursday] following the first full Week, the Debtors shall deliver to the Prepetition Secured Lender a variance report comparing, on a line item basis, actual results to the Budget for the previous individual Week on a weekly, cumulative, and four-week trailing basis.<br><br>The Debtors shall test the Budget on the Thursday following the first four (4) full Weeks on a four-week trailing basis (each such four week period, the "Budget Period") and every other Thursday thereafter; provided, that, under no circumstances shall any Professional (defined below) fees and out-of-pocket expenses be tested as part of the |

---

[3] Capitalized terms used but not otherwise defined in the chart have the meanings ascribed to them in the Interim Order. This summary and any other description of the Interim Order provided for in this Motion is qualified in its entirety by the actual terms of the Interim Order. The actual terms of the Interim Order will control in the event of any inconsistency between this Motion and the Interim Order.

8

| Required Disclosure | Summary of Material Term |
|---|---|
|  | Budget.  So long as no Termination Event (defined below) has occurred, the Debtors shall be authorized to use Cash Collateral in accordance with the Budget and the Interim Order in an amount that would not cause actual disbursements to be more than twenty-percent [(20%)] in excess of the disbursements included in the Budget for any Budget Period (the "Permitted Variance").<br><br>In addition, the Debtors shall deliver to the Prepetition Secured Lender any reporting currently required to be delivered pursuant to the Prepetition Secured Loan Documents, as and when due or requested thereunder, including any grace periods. |
| **Duration of Use of Cash Collateral / Events of Default**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii) | The Debtors' right to use Cash Collateral shall automatically terminate (the date of such termination, the "Termination Date"), without further notice or court proceeding, on the earliest to occur of any of the events set forth below (each such event, a "Termination Event"), in each case unless waived in writing by the Prepetition Secured Lender:<br>(i) the Interim Order (unless replaced by the Final Order, in which case, the Final Order) ceases to be in full force and effect for any reason;<br>(ii) by the date that is seven (7) calendar days after the Petition Date, if the Debtors have not filed a motion seeking to extend the period to assume or reject the Debtors' unexpired leases of non-residential real property (the "Real Property Leases") by an additional ninety (90) calendar days (the "Lease Extension Motion");<br>(iii) the Debtors file a motion under section 365 of the Bankruptcy Code to reject any Real Property Lease without the consent of the Prepetition Secured Lender;<br>(iv) the date that is thirty (30) calendar days after the Petition Date if (x) the Final Order, in form and substance acceptable to the Prepetition Secured Lender (such order, the "Final Order"), has not been entered by the Court on or prior to such date and (y) the Bankruptcy Court has not entered an order approving the Lease Extension Motion on or prior to such date;<br>(v) the Debtors file a plan of reorganization, a plan of liquidation, or a combined plan and disclosure statement (the "Plan") that is not acceptable to the Prepetition Secured Lender;<br>(vi) the Court shall not have entered an order confirming the Plan on or before June 1, 2020;<br>(vii) the effective date of the Plan shall not have occurred on or before June 15, 2020;<br>(viii) the Debtors file a motion to sell any of their assets pursuant to section 363 of the Bankruptcy Code that is not acceptable to the Prepetition Secured Lender;<br>(ix) by the date that is fourteen (14) days days from the Petition Date, if Debtors have not filed one or more motions (each a "Sale Motion"), in form and substance acceptable to the Prepetition Secured Lender, requesting (x) an order or orders from the Bankruptcy Court (each a "Bid Procedures Order") approving the proposed bid procedures attached to the Sale Motion(s) related to the sale of substantially all of the assets of the Debtors (the "Bid Procedures"), and (y) an order from the Bankruptcy Court (the "Sale Order") approving the sale of all or substantially all of the Debtors' assets to the highest and best bidder, or bidders, for such assets pursuant to Section 363 of the Bankruptcy Code;<br>(x) by the date that is thirty-five (35) days from the Petition Date, if the Debtors have not obtained the Bid Procedures Order(s), in form and substance reasonably satisfactory to the Prepetition Secured Lender;<br>(xi) by the date that is 55 days from the Petition Date, if the Debtors have not completed an auction for their assets in accordance with the Bid Procedures. The Debtors shall declare a "winning bidder" and a "back-up bidder" for their assets in consultation with the Prepetition Secured Lender.  The terms of each |

9

| Required Disclosure | Summary of Material Term |
|---|---|
| | "winning bid" and "back-up" bid shall be acceptable to the Prepetition Secured Lender and shall, among other things, provide for proceeds from the sale(s) in a minimum amount satisfactory to the Prepetition Secured Lender; <br><br> (xii) by the date that is 75 days from the Petition Date, if the Bankruptcy Court has not entered the Sale Order(s) approving the winning bid(s) resulting from the auction; <br><br> (xiii) by the date that is 85 days from the Petition Date, if the Debtors have not consummated the sale(s) of their assets to the winning bidder(s) at the auction; <br><br> (xiv) the failure of the Debtors to comply in any material respect with a provision of the Interim Order or the Final Order (as applicable), including the Budget (subject to any Permitted Variance); <br><br> (xv) the dismissal of any of the Cases, the conversion of any Case to a case under chapter 7 of the Bankruptcy Code, the appointment in any Case of a trustee or examiner under chapter 11 of the Bankruptcy Code, the Court shall abstain from hearing any of the Cases in accordance with Section 305 of the Bankruptcy Code, or any of the Debtors shall file a motion or other pleading, or support any motion or other pleading filed by any other party, seeking any of the foregoing relief; <br><br> (xvi) an order of the Court is entered (or any of the Debtors shall seek an order) reversing, staying, vacating, or otherwise amending, supplementing, or modifying the Interim Order or the Final Order without the prior written consent of the Prepetition Secured Lender; <br><br> (xvii) the Debtors shall create, incur, or suffer to exist any postpetition liens or security interests on any Adequate Protection Collateral other than those specified herein; <br><br> (xviii) other than with respect to the Carve-Out, the Debtors shall create, incur, or suffer to exist any claim or lien *pari passu* with or senior to the Adequate Protection Liens or the Adequate Protection Superpriority Claims while any portion of the Prepetition Indebtedness or the Adequate Protection Obligations remain outstanding, or the Court shall grant any application by any party seeking payment of any claim on a superpriority administrative claim basis *pari passu* with or senior to the Adequate Protection Superpriority Claims, without the written consent of the Prepetition Secured Lender; <br><br> (xix) the Adequate Protection Liens or the Adequate Protection Superpriority Claims shall cease to be valid, perfected, and enforceable in all respects or the filing by any Debtor of any motion, pleading, application, or adversary proceeding challenging the validity, enforceability, perfection, or priority of the Prepetition Liens securing the Prepetition Indebtedness or asserting any other cause of action against and/or with respect to the Prepetition Indebtedness, the Prepetition Secured Lender's claim in respect of such Prepetition Indebtedness, or the Prepetition Collateral securing such Prepetition Indebtedness (or if the Debtors support any such motion, pleading, application, or adversary proceeding commenced by any third party); <br><br> (xx) the Debtors shall file or the Court shall grant any application, motion or borrowing request seeking to: (i) incur, without the written consent of the Prepetition Secured Lender, any indebtedness from any party secured by a lien on, or, except for the Carve-Out, otherwise having a claim against or recourse to, as the case may be, the Debtors, the Prepetition Collateral or the Adequate Protection Collateral, unless such liens or claims are junior and subordinated in all respects to the Prepetition Liens, the Prepetition Indebtedness, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims; or (ii) use Cash Collateral on a nonconsensual basis; <br><br> (xxi) the entry of an order by the Court or any other court having jurisdiction to do so granting relief from or modifying the automatic stay applicable under Section 362 of the Bankruptcy Code or otherwise allowing a holder or holders of any liens or security interests, to foreclose or otherwise realize upon their liens or |

| Required Disclosure | Summary of Material Term |
|---|---|
| | security interests in any Adequate Protection Collateral or Prepetition Collateral;<br>(xxii)     the Debtors' exclusive right to file and solicit acceptance of a chapter 11 plan terminates; or<br>(xxiii)    any Debtor shall make any material payment (including any Adequate Protection Payment) on or in respect of any prepetition obligations other than, in accordance with the Budget (subject to any Permitted Variance), including pursuant to the Interim Order or any other interim or final order entered with respect to the Debtors' "first day" motions (it being understood that any such motions and orders must be in form and substance reasonably acceptable to the Prepetition Secured Lender). |
| **Carve-Out**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii) | Subject to the terms and conditions contained in Paragraph [8] of the Interim Order, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims, which have the relative lien and payment priorities as set forth herein, shall, in any event, in all cases be subject and subordinate to a carve-out (the "Carve-Out"), which shall be comprised of the following:  (i) any fees payable to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code; (ii) all accrued and unpaid fees and out-of-pocket expenses of each professional retained in the Cases pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code by the Debtors or their estates and any Committee pursuant to an order of the Court (each, a "Professional"), incurred in accordance with the Budget on or prior to the occurrence of a Carve-Out Event (defined below); (iii) after the occurrence of a Carve-Out Event, all accrued and unpaid fees and out-of-pocket expenses incurred by the Professionals in an aggregate amount for all such Professionals, not to exceed $50,000 (the "Post-Carve-Out Notice Cap"), and (iv) any and all reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code not to exceed $50,000, in each case, to the extent allowed by the Court at any time; provided, that, the Carve-Out shall not include any bonus, transaction, success fees, completion fees, substantial contribution fees, or any other fees of similar import of any of the foregoing for Professionals.  Nothing herein shall be construed to impair the right of any party to object to the reasonableness of any fees or out-of-pocket expenses by any such Professionals or any other person or entity.  For purposes hereof, a "Carve-Out Event" shall occur upon the delivery of a written notice of the occurrence and continuance of a Termination Event to (a) the Debtors, (b) the Debtors' counsel, (c) the U.S. Trustee, (d) counsel to the Committee, if any, and (e) counsel to the Prepetition Secured Lender (collectively, the "Carve-Out Notice Parties"), stating that a Termination Event has occurred and that the Debtors' ability to pay Professionals is now subject to the Carve-Out (a "Termination Notice").  Upon the delivery of a Termination Notice, the Debtors shall provide immediate notice by email to all Professionals informing them that a Carve-Out Event has occurred and that the Debtors' ability to pay Professionals is subject to the Carve-Out.  A waiver of a Termination Event triggering a Carve-Out Event shall constitute the cancellation of such Carve-Out Event allowing the Debtors to pay allowed fees and out-of-pocket expenses of Professionals, as the same may be due and payable, without reducing the Carve-Out. |
| **Adequate Protection**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iv) | As adequate protection for the interests of the Prepetition Secured Lender in the Prepetition Collateral (including Cash Collateral), solely to the extent of, and in an aggregate amount equal, in each case, to, the diminution in value of such interests, from and after the Petition Date, resulting from, among other things, the use, sale or lease by the Debtors of the Prepetition Collateral (including the use of Cash Collateral) and the imposition or enforcement of the automatic stay of Section 362(a) of the Bankruptcy Code (collectively, "Diminution in Value") the Prepetition Secured Lender shall receive the following (collectively, the "Adequate Protection Obligations"):<br><br>**(a) Replacement Liens**.  The Prepetition Secured Lender is hereby granted, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, replacement security |

11

| Required Disclosure | Summary of Material Term |
|---|---|
| | interests in and liens upon (the "Replacement Liens") all of the Debtors' postpetition property which, but for the commencement of the Cases, would constitute Prepetition Collateral (the "Replacement Collateral"); provided that the Replacement Liens shall in each case be subject and subordinate only to (i) the Carve-Out, (ii) any liens that exist on, and are legal, valid, binding, enforceable, perfected, and non-avoidable, as of the Petition Date and are permitted to be senior to the Prepetition Liens (as applicable) pursuant to applicable Prepetition Secured Loan Documents, and (iii) any liens in existence immediately prior to the Petition Date that are legal, valid, enforceable, binding and non-avoidable, and are perfected after the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, and which are permitted to be senior to the Prepetition Liens pursuant to applicable Prepetition Secured Loan Documents, and in each case not including the Prepetition Liens or the Adequate Protection Liens (such liens described in clauses (ii) and (iii), collectively, and not including any Prepetition Liens or Adequate Protection Liens, the "Prepetition Permitted Liens").<br><br>**(b) Additional Liens**. The Prepetition Secured Lender is hereby also granted additional liens on and security interests in (collectively, the "Additional Liens" and, together with the Replacement Liens, the "Adequate Protection Liens") all tangible and intangible property of the Prepetition Secured Lender other than the property set forth in Paragraph 3(a) above, whether existing on or as of the Petition Date or thereafter acquired, subject only to (i) the Carve-Out, (ii) any legal, valid, binding, enforceable, perfected, and non-avoidable liens in existence on or as of the Petition Date and (iii) any legal, valid, binding, enforceable, and non-avoidable liens that are perfected after the Petition Date as permitted by Section 546(b) of the Bankruptcy Code (collectively, the "Additional Collateral" and, together with the Replacement Collateral, the "Adequate Protection Collateral"), provided that the Additional Liens shall not attach to any avoidance actions or claims under Sections 502(d), 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable state law (collectively, the "Avoidance Actions"); and provided further, that, subject to the entry of the Final Order, the Additional Liens shall attach to all proceeds of Avoidance Actions.<br><br>**(c) Adequate Protection Superpriority Claims**. The Prepetition Secured Lender is hereby granted, subject only to payment of the Carve-Out, an allowed superpriority administrative expense claim (each an "Adequate Protection Superpriority Claim" and, collectively, the "Adequate Protection Superpriority Claims") pursuant to Section 507(b) of the Bankruptcy Code against the Debtors in each of the Cases or any Successor Case (as defined below). The Adequate Protection Superpriority Claims shall include all amounts incurred by the Prepetition Secured Lender for reasonable fees and expenses for one primary law firm and one local counsel. Subject only to the Carve-Out, and except as provided below, the Adequate Protection Superpriority Claims shall have priority over any and all administrative expenses, adequate protection claims and other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in Sections 105(a), 326, 328, 330, 331, 503(b), 507(b), 726, and 1114 of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under the Bankruptcy Code. Other than the Carve-Out, no cost or expense of administration of the Cases shall be senior to, or *pari passu* with, any of the Adequate Protection Superpriority Claims.<br><br>Subject only to (and only to the extent of) any timely and successful Challenge (defined below), all Adequate Protection Obligations and any other payments made to the Prepetition Secured Lender shall be, as applicable, indefeasible and/or irrevocable when made and free and clear of all liens and claims, including, without limitation, any |

| Required Disclosure | Summary of Material Term |
|---|---|
| | claims covered by the Carve-Out. |
| | Notwithstanding anything to the contrary herein, with respect to nonresidential real property leases, no Replacement Liens, Additional Liens or other liens or encumbrances shall be granted or extended to such leases under the Interim Order, except as permitted by the applicable lease or pursuant to applicable law, but in any event, any such lien is hereby granted on the economic value of or proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests in accordance with the terms of the Interim Order. Notwithstanding anything to the contrary herein, the rights of the Prepetition Secured Lender to enter onto the Debtors' leased premises shall be limited to (a) any such rights agreed in writing by the applicable landlord pursuant to any separate agreement by and between such landlord and the Prepetition Secured Lender, as applicable, (b) the rights the Prepetition Secured Lender has under applicable non-bankruptcy law, if any, and (c) such rights as may be granted by the Court on a separate motion with notice to the applicable landlords of the leased premises appropriate under the circumstances. |

21.     The Interim Order includes certain terms which constitute material provisions requiring explicit disclosure under the Local Rules. The provisions described in Local Rule 4001-2(a)(i), to the extent applicable, are set forth at the following sections of the Interim Order:

a. Local Rule 4001-2(a)(i)(A) – Cross Collateralization. No provision of the Interim Order grants cross-collateralization protection of the type contemplated by the Local Rules.

b. Local Rule 4001-2(a)(i)(B) – Validity, Perfection, and Amount of Prepetition Liens. Subject to the entry of the Final Order, the Debtors and Prepetition Secured Lender stipulate to the validity, perfection, unavoidability, and amount of the Prepetition Indebtedness and Prepetition Liens held by the Prepetition Secured Lender. *See* Interim Order, ¶¶ G(a)-(c).

c. Local Rule 4001-2(a)(i)(C) – Section 506(c) Waiver. Subject to the entry of the Final Order, in consideration of its agreement to permit use of Cash Collateral, the Debtors and the Prepetition Secured Lender have agreed to waive the provisions of Bankruptcy Code section 506(c) and any "equities of the case" claims under Bankruptcy Code section 552(b). *See* Interim Order ¶¶ K, 11, and 12.

d. Local Rule 4001-2(a)(i)(D) – Liens on Avoidance Actions. No provision of the Interim Order grants liens on avoidance actions.

e. Local Rule 4001-2(a)(i)(E) – Provisions Deeming Prepetition Debt to be Postpetition Debt. The Interim Order contains no provisions that deem prepetition debt to be postpetition debt or that use postpetition loans from

    a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt.

  f. <u>Local Rule 4001-2(a)(i)(F) – Disparate Treatment of Professionals Retained by the Committee</u>. The Interim Order contains no provisions that provide for any disparate treatment of professional retained by an official committee of unsecured creditors, if any.

  g. <u>Local Rule 4001-2(a)(i)(G) – Nonconsensual Priming</u>. The Interim Order does not provide for nonconsensual priming of any existing lien.

  h. <u>Local Rule 4001-2(a)(i)(H) – Provisions Affecting the Court's Power to Consider Equities of the Case</u>. Subject to entry of the Final Order, the Debtors have agreed to waive the provisions of Bankruptcy Code section 506(c) and any "equities of the case" claims under Bankruptcy Code section 552(b). *See* Interim Order ¶¶ K, 11, and 12.

## BASIS FOR RELIEF

**I. Cash Collateral and Adequate Protection**

  22. Bankruptcy Code section 363(c)(2) provides that a debtor may use cash collateral as long as (a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section. 11 U.S.C. § 363(c)(2). Bankruptcy Code section 363(e) provides that s that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). *See also In re DeSardi*, 350 B.R. 790, 797 (Bankr. S.D. Tex. 2006) ("Adequate protection . . . is grounded in the belief that secured creditors should not be deprived of the benefit of their bargain"). The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral); *see also*

14

*In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 is limited to use-based decline in value).

23.     Bankruptcy Code section 362(d)(1) provides for adequate protection in property due to the imposition of the automatic stay. 11 U.S.C. § 362(d)(1). *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996). Although Bankruptcy Code section 361 provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case . . . .") (citation and quotation omitted).

24.     The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 is limited to use-based decline in value).

25.     Here, the Prepetition Secured Lender has consented to the Debtors' use of Cash Collateral on the terms set forth in the Interim Order. The proposed adequate protection included

72094271.3

in the Interim Order provides adequate protection in the form of, among other things, the Replacement Liens, the Superpriority Administrative Claim, and reporting requirements

26. The Debtors submit that the proposed adequate protection is appropriate and sufficient to protect the Prepetition Secured Lender from any diminution in value of the Prepetition Collateral. The Cash Collateral will be used for funding business operations and allowing the Debtors to transition into the Chapter 11 Cases. Immediate access to this liquidity will permit the Debtors to fund payroll, pay vendors, and otherwise continue business in the ordinary course. As detailed in the First Day Declaration, one reason underlying the filing of these Chapter 11 Cases is to liquidate certain assets and conduct sales processes pursuant to Bankruptcy Code section 363. If Cash Collateral is not available, the Debtors will dissipate value to the detriment of all of its stakeholders. Thus, the use of Cash Collateral will protect the Prepetition Secured Lender's security interests by preserving the value of the Prepetition Collateral. *See In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor). *See also Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.)*, 193 B.R. 713, 716 (Bankr. D. Del. 1996); *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992).

27. In light of the foregoing, the Debtors submit that the proposed adequate protection to be provided is appropriate and necessary to protect such party against any diminution in value and is also fair and appropriate on an interim basis under the circumstances of this case and to ensure that the Debtors are able to continue using Cash Collateral in the near term, for the benefit of all parties in interest and their estates.

28. Based on the foregoing, the Debtors respectfully submit that entry of the Interim Order authorizing the interim use of Cash Collateral and scheduling a Final Hearing to approve the use of Cash Collateral on a final basis is necessary and appropriate.

## II. Modification of the Automatic Stay is Warranted

29. The relief requested by this Motion contemplates a modification of the automatic stay. 11 U.S.C. § 362. The automatic stay should be modified on a limited basis (to the extent applicable) as necessary to effectuate all terms and provisions of the Interim Order, including, without limitation to: (a) permit the Debtors to grant the Adequate Protection Liens and incur the Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as may be needed to assure the perfection and priority of the liens granted herein; and (c) permit the Debtors to incur all liabilities and obligations under the terms of the Interim Order.

30. In addition, the Interim Order provides for the termination of the automatic stay to permit the Prepetition Secured Lender to exercise, upon the occurrence and during the continuation of a Termination Event, and to take other remedies relating to the Cash Collateral without further order or application to the Court. The Prepetition Secured Lender is required to provide five (5) business days' notice to the Carve-Out Notice Parties.

31. Stay modifications of this kind are ordinary and standard terms of postpetition use by debtors in possession of prepetition collateral, and, in the Debtors' business judgment, is reasonable under the present circumstances.

32. Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order.

72094271.3

**III.     Interim Approval and Scheduling of a Final Hearing**

33.     Interim relief may be granted on a motion to use cash collateral pursuant to Bankruptcy Code sections 363(c) or 364 where relief "is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), (c)(2).

34.     The Debtors believe that all or substantially all of their available cash constitutes Cash Collateral and is therefore unable to proceed to continue its business operations without the ability to use Cash Collateral and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest. The Debtors' ability to finance its operations is vital to the preservation and maintenance of the value of the Debtors' assets.

35.     The Debtors will face immediate and irreparable harm without the entry of the Interim Order. Therefore, the Debtors respectfully request that the Court schedule a final hearing, no sooner than 14 days after the date of this Motion and no later than 25 days after the Petition Date, to consider entry of the Final Order.

36.     Moreover, Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor.

**WAIVER OF BANKRUPTCY RULES**

37.     To the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code section 363(b), the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay under Bankruptcy Rule 6004(h), to the extent applicable. *See* Fed. R. Bankr. P. 6004(a), (h). As described above, the relief that the Debtors seeks in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their businesses and preserve the value of their estates. The

Debtors respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## CONSENT TO JURISDICTION

38. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NOTICE

39. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (c) counsel to the Prepetition Secured Lender; (d) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (e) all parties entitled to notice pursuant to Local Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

40. No prior motion for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested in the Motion and such other and further relief as the Court deems appropriate.

Dated: January 27, 2020
      Wilmington, Delaware

Respectfully submitted,

**POLSINELLI PC**

*/s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com

-and-

Liz Boydston (*Pro Hac Vice* Pending)
2950 N. Harwood, Suite 2100
Dallas, TX 75201
Telephone: (214) 661-5557
lboydston@polsinelli.com

*Proposed Counsel to the Debtors and Debtors in Possession*