## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUCKY'S MARKET PARENT COMPANY, LLC, *et al.*,[1] | Case No. 20-10166 (JTD) |
| Debtors. | (Joint Administration Pending) |
| | **Re: Docket No. 12** |

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 507, FED. R. BANKR. P. 2002, 4001 AND 9014, AND DEL. BANKR. L.R. 4001-2 (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL OF THE PREPETITION SECURED LENDER, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED LENDER, (III) PRESCRIBING FORM AND MANNER OF NOTICE OF AND SCHEDULING FINAL HEARING, AND (IV) GRANTING RELATED RELIEF

Upon the motion, dated January 27, 2020 (the "Motion")[2], of Lucky's Market

Parent Company, LLC ("LMPC") and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), for the entry

of an interim order (this "Interim Order") and a Final Order (defined below), pursuant to Sections

105, 361, 362, 363, and 507 of title 11 of the United States Code, 11 U.S.C. §§101-1532 (as

amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Lucky's Market Parent Company, LLC (2055), Lucky's Farmers Market Holding Company, LLC (5480), Lucky's Market Operating Company, LLC (7064), LFM Stores LLC (3114), Lucky's Farmers Market, LP (0828), Lucky's Farmers Market Resource Center, LLC (7711), Lucky's Market Holding Company 2, LLC (0607), Lucky's Market GP 2, LLC (9335), Lucky's Market 2, LP (8384), Lucky's Market of Longmont, LLC (9789), Lucky's Farmers Market of Billings, LLC (8088), Lucky's Farmers Markets of Columbus, LLC (3379), Lucky's Farmers Market of Rock Hill, LLC (3386), LFM Jackson, LLC (8300), Lucky's Farmers Market of Ann Arbor, LLC (4067), Lucky's Market of Gainesville, LLC (7877), Lucky's Market of Bloomington, LLC (3944), Lucky's Market of Plantation, LLC (4356), Lucky's Market of Savannah, GA, LLC (1097), Lucky's Market of Traverse, City, LLC (2033), Lucky's Market of Naples, FL, LLC (8700), and Sinoc, Inc. (0723).

[2] Capitalized terms used herein but not defined herein shall have the meanings ascribed to them in the Motion.

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (such rules, the "Local Rules," and such court, the "Court"), seeking, among other things, the following relief:

(a)     authorization to use "cash collateral" as such term is defined in Section 363 of the Bankruptcy Code in which the Prepetition Secured Lender (as defined below) have an interest (the "Cash Collateral"), in accordance with this Interim Order and the Budget (as defined below);

(b)     authorization to grant, as of the Petition Date (as defined below), the Adequate Protection Superpriority Claims and Adequate Protection Liens (each as defined below), to the extent of and as compensation for any Diminution in Value (as defined below);

(c)     modification by the Court of the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the Final Order;

(d)     the Court's approval of certain stipulations as set forth in paragraph G of this Interim Order;

(e)     subject to entry of the Final Order, except to the extent of the Carve Out (as defined below) (solely to the extent expressly set forth herein), the waiver by the Debtors of any right to surcharge against or recover from the Prepetition Secured Lender, the Adequate Protection Collateral or the Prepetition Collateral (each as defined below) pursuant to Section 506(c) of the Bankruptcy Code or any similar principle of law;

(f)     subject to entry of the Final Order, the waiver of the "equities of the case" exception under Section 552(b) of the Bankruptcy Code with respect to the Prepetition Secured Lender, the proceeds of any of the Prepetition Collateral, and the extension of the Adequate Protection Liens to the proceeds of the Prepetition Collateral;

72142586.3

(g)     the scheduling of a final hearing (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis and approving the notice with respect to the Final Hearing and the transactions contemplated by the Motion; and

(h)     waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for the immediate effectiveness of this Interim Order.

The Court having considered the Motion, the *Declaration of Andy Pillari in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, sworn to on January 27, 2020 in Support of the First Day Motions (the "First Day Declaration "), and the evidence submitted at the interim hearing held before the Court on January 28, 2020 (the "Interim Hearing") to consider entry of this Interim Order; and notice of the Motion and the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b) and (d), and 9014, and the Local Rules; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and is otherwise fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and essential for the continued operation of the Debtors' businesses; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

## THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     **Petition Date**.  On January 27, 2020 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the Court.

B.     **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Cases.

3

C.     **Jurisdiction and Venue**.   The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated as of February 29, 2012.Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).   The Court may enter a final order consistent with Article III of the United States Constitution.   Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.   The predicates for the relief sought herein are Sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2.

D.     **Committee Formation**.   As of the date hereof, no official committee of unsecured creditors (together with any other statutory committee, a "Committee") has been appointed in the Cases.

E.     **Notice**.   On the Petition Date, the Debtors filed the Motion with the Court pursuant to Bankruptcy Rules 2002, 4001 and 9014, and provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or their respective counsel as indicated below:  (i) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19899 (Attn: Timothy Fox, Esq.) (the "U.S. Trustee"), (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, (iii) the Office of the United States Attorney General for the District of Delaware, (iv) the Internal Revenue Service, (v) the Securities and Exchange Commission, (vi) financial institutions at which the Debtors maintain deposit accounts, (vii) counsel to the Prepetition Secured Lender (as defined below): Weil, Gotshal & Manges LLP ("Weil"), 767 Fifth Ave., New York, NY 10153 (Attn:  Garrett A. Fail, Esq.), and Richard, Layton

4

& Finger PA ("RLF"), One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Zachary Shapiro, Esq.), and (viii) all other parties asserting a lien on or a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; and (x) any other party entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "Notice Parties"). Based on the foregoing, notice of the Motion and the Interim Hearing has been provided in accordance with Bankruptcy Rules 2002 and 4001(b) and (d), and the Local Rules.

   **F.**  **Prepetition Secured Indebtedness**. On or about September 15, 2016, LMPC and Kroger, as lender (the "Prepetition Secured Lender"), entered into that certain Promissory Note (as amended prior to the date hereof, the "A Note"), pursuant to which the Prepetition Secured Lender agreed to lend LMPC up to $23,328,810 (the "A Prepetition Secured Loan").

     On or about August 9, 2017, the Prepetition Secured Lender, entered into that certain Secured Loan Agreement (the "B Prepetition Loan Agreement"), pursuant to which the Prepetition Secured Lender agreed to lend LMPC up to $25,177,640 (the "B Prepetition Secured Loan").

     The B Prepetition Secured Loan is evidenced by that certain Promissory Note dated August 9, 2017 made by LMPC in favor of the Prepetition Secured Lender (as amended prior to the date hereof, the "B Note").

     To secure the obligations under the A Note and B Prepetition Loan Agreement, LMPC and the Prepetition Secured Lender entered into that certain Security Agreement dated as of August 9, 2017 (the "AB Security Agreement"). Pursuant to the AB Security Agreement, LMPC assigned and granted to the Prepetition Secured Lender, a continuing lien on and security interest in substantially all of LMPC's personal property with respect to certain identified store locations (the "AB Security Agreement Collateral").

5

The obligations of LMPC under the A Note and B Prepetition Loan Agreement are guaranteed by Debtor Lucky's Market Operating Company, LLC ("LMOC" and together with LMPC, the "Prepetition Secured Credit Parties") pursuant to that certain Guaranty dated as of August 9, 2017 between LMOC and the Prepetition Secured Lender (the "AB Guaranty"). To secure the obligations of LMOC under the AB Guaranty, LMOC and the Prepetition Secured Lender entered into that certain Guaranty Security Agreement dated as of August 9, 2017 between LMOC and the Prepetition Secured Lender (the "AB Guaranty Security Agreement"). Pursuant to the AB Guaranty Security Agreement, LMOC assigned and granted to the Prepetition Secured Lender, a continuing lien on and security interest in substantially all of LMOC's personal property with respect to certain identified store locations (the "AB Guarantor Collateral").

On or about December 4, 2017, LMPC, as borrower, and the Prepetition Secured Lender entered into that certain Secured Loan Agreement (as amended, the "C Prepetition Loan Agreement" and together with the B Prepetition Loan Agreement, the "Prepetition Loan Agreements"), pursuant to which the Prepetition Secured Lender agreed to make loans to LMPC (the "C Prepetition Secured Loan" and together with the A Prepetition Secured Loan and the B Prepetition Secured Loan, the "Prepetition Secured Loans"). The Prepetition Secured Lender entered into agreements subsequently to, among other things, lend LMPC additional amounts over time.[3]

---

[3] Loan Modification Agreements were dated February 23, 2018, July 2, 2018, September 21, 2018, November 15, 2018, January 28, 2019, February 6, 2019, February 13, 2019, February 20, 2019, February 27, 2019, March 6, 2019, March 13, 2019, March 20, 2019, March 27, 2019, April 2, 2019, April 10, 2019, April 16, 2019, April 23, 2019, April 30, 2019, May 7, 2019, May 14, 2019, May 21, 2019, May 28, 2019, June 4, 2019, June 11, 2019, June 18, 2019, June 25, 2019, July 2, 2019, July 9, 2019, July 16, 2019, July 23, 2019, July 30, 2019, August 6, 2019, August 13, 2019, August 20, 2019, August 27, 2019, September 3, 2019, September 10, 2019, September 17, 2019, September 24, 2019, October 1, 2019, October 8, 2019, October 15, 2019, October 22, 2019, October 30, 2019, November 5, 2019, November 12, 2019, November 19, 2019, November 26, 2019, December 3, 2019, December 10, 2019, December 17, 2019, December 24, 2019, and December 31, 2019.

72142586.3

The C Prepetition Secured Loan is evidenced by that certain Amended and Restated Promissory Note dated December 31, 2019 made by LMPC in favor of the Prepetition Secured Lender (as amended by prior to the date hereof, the "C Note" and together with the A Note and B Note, the "Notes").

To secure the obligations under the C Prepetition Loan Agreement, LMPC and the Prepetition Secured Lender entered into that certain Security Agreement dated as of December 4, 2017 (the "C Security Agreement" and together with the AB Security Agreement, the "Security Agreements"). Pursuant to the C Security Agreement, LMPC assigned and granted to the Prepetition Secured Lender, a continuing lien on and security interest in substantially all of LMPC's personal property (the "C Security Agreement Collateral" and together with the AB Security Agreement Collateral, the "Borrower Collateral").

The obligations of LMPC under the C Prepetition Loan Agreement are guaranteed by LMOC pursuant to that certain Guaranty dated as of December 4, 2017 between LMOC and the Prepetition Secured Lender (the "C Guaranty" and together with the AB Guaranty, the "Guaranties").  To secure the obligations of LMOC under the C Guaranty, LMOC and the Prepetition Secured Lender entered into that certain Guaranty Security Agreement dated as of December 4, 2017 between LMOC and the Prepetition Secured Lender (the "C Guaranty Security Agreement", and together with the AB Guaranty Security Agreement, the "Guaranty Security Agreements"). Pursuant to the C Guaranty Security Agreement, LMOC assigned and granted to the Prepetition Secured Lender, a continuing lien on and security interest in substantially all of LMOC's personal property (the "C Guarantor Collateral" and together with the AB Guarantor Collateral and the Borrower Collateral, the "Prepetition Collateral"). The Guaranty Security Agreements together with the Prepetition Loan Agreements, the Notes, the Security Agreements,

the Guaranties, and all other documents, instruments, related writings, financing statements, security documents, and guarantees executed in connection therewith, as each has been and may in the future be amended, restated, or replaced, the "Prepetition Secured Loan Documents" and the obligations thereunder, the "Prepetition Secured Loan Obligations".

      G.    **Stipulations as to Prepetition Indebtedness**.  Without limiting the rights of a Committee or any other party in interest with standing, as and to the extent set forth in Paragraph 7 hereof, the Debtors permanently, immediately, and irrevocably acknowledge, represent, stipulate, admit and agree:

      (a)    **Prepetition Secured Loan Obligations.**  As of the Petition Date, the Prepetition Secured Credit Parties were indebted and liable to the Prepetition Secured Lender (a) in the aggregate principal amount of $301,156,450, plus (b) interest accrued (before and after the Petition Date) and unpaid thereon, fees and expenses (before and after the Petition Date), reimbursement obligations, increased costs, tax gross-ups, breakage costs, indemnities, costs, and all other obligations payable under the Prepetition Secured Loan Documents, including any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable or reimbursable under the Prepetition Secured Loan Documents (clauses (a) and (b) together, the "Prepetition Indebtedness"), and the Prepetition Secured Loan Obligations constitute allowed claims against the applicable Debtors' estates.

      (b)    **Enforceability, etc. of the Prepetition Indebtedness**.  The Prepetition Secured Loan Documents and the Prepetition Indebtedness are (a) legal, valid, binding, and enforceable against the Prepetition Secured Credit Parties, and (b) not subject to any contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, re-characterization,

8

avoidance or other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

(c) **Enforceability, etc. of Prepetition Liens**.  The Liens granted by the Prepetition Secured Credit Parties under the Prepetition Secured Loan Documents (the "Prepetition Liens") to or for the benefit of the Prepetition Secured Lender encumber all of the Prepetition Collateral.  The Prepetition Liens are legal, valid, enforceable, non-avoidable, and not subject to contest, avoidance, attack, offset, re-characterization, subordination or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.  The Prepetition Liens have been properly recorded and perfected under applicable non-bankruptcy law to the extent such Prepetition Liens in the Prepetition Collateral may be perfected by filing a financing statement under applicable non-bankruptcy law. As of the Petition Date, and without giving effect to this Interim Order, the Debtors are not aware of any liens on or security interests in the Prepetition Collateral having priority over the Prepetition Liens.  The Prepetition Liens were granted to or for the benefit of the Prepetition Secured Lender for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby.

(d) **Indemnity**.  The Prepetition Secured Lender has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting or obtaining the requisite Court approval for the use of Cash Collateral, including in respect of the granting of the Adequate Protection Liens, any challenges or objections to the use of Cash Collateral, and all documents related to and all transactions contemplated by the foregoing.  Accordingly, the Prepetition Secured Lender shall be and hereby is indemnified and held harmless by the Debtors

72142586.3

in respect of any claim or liability incurred in respect thereof or in any way related thereto (including reasonable attorneys' and consultants' fees and disbursements). No exception or defense in contract, law or equity exists as to any obligation set forth, as the case may be, in this subparagraph G(e) and in the Prepetition Secured Loan Documents to indemnify and/or hold harmless the Prepetition Secured Lender and any such defenses are hereby waived.

(e)     **No Claims, Defenses or Causes of Actio**n.  As of the date hereof, there exist no claims, defenses or causes of action against the Prepetition Secured Lender with respect to, in connection with, related to, or arising from any of the Prepetition Secured Loan Documents, respectively, or any of the transactions contemplated thereunder, that may be asserted by the Debtors or any other person or entity.

(f)     **Release**.  The Debtors forever and irrevocably release, discharge, and acquit the Prepetition Secured Lender, and any of its former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the Prepetition Secured Loan Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, (a) any and all so-called

"lender liability" or equitable subordination claims or defenses, (b) any and all claims and causes of action arising under the Bankruptcy Code, and (c) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of, or for the benefit of, the Prepetition Secured Lender.

H.    **Necessity of Relief Requested**.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2), and good cause has been shown for entry of this Interim Order.  An immediate need exists for the Debtors to use the Cash Collateral in order to continue operations and administer and preserve the value of their estates pending a sale of the Debtors' assets and property pursuant to an agreed restructuring process.  The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and to maximize the return for all creditors requires the Debtors to be able to use Cash Collateral and to continue to have access to such liquidity.  In the absence of the availability of such liquidity in accordance with the terms hereof, serious and irreparable harm to the Debtors and their estates and creditors would occur.  Thus, the ability of the Debtors to preserve and maintain the value of their assets and maximize the return for creditors requires the availability of working capital from the use of Cash Collateral.  Furthermore, the terms of the use of Cash Collateral, including the grant of adequate protection and the other rights and benefits of the parties set forth in this Interim Order, are fair and reasonable, and the product of arms' length negotiations, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.  Accordingly, entry of this Interim Order is in the best interests of the Debtors, their respective estates and their creditors and other parties-in-interest.

I.    **Use of Cash Collateral**.  All Cash Collateral and all proceeds of the Prepetition Collateral and the Adequate Protection Collateral, shall only be used for:  (i) working capital; (ii)

72142586.3

administrative costs and expenses incurred by the Debtors in selling the Debtors' assets pursuant to section 363 of the Bankruptcy Code; (iii) costs and expenses incurred by the Debtors in closing certain of the Debtors' stores and/or assuming, assuming and assigning, or rejecting leases to which the Debtors are party upon authorization of the Court; and (iv) the satisfaction of the costs and expenses of administering the Cases, including, without limitation, payment of any prepetition obligations to the extent approved by the Court; and for no other purpose, and shall only be used and/or applied in accordance with the terms and conditions of this Interim Order, including, without limitation, the Budget (subject to any Permitted Variance (defined below)).

J.      **Adequate Protection for the Prepetition Secured Lender**.  The Prepetition Secured Lender has negotiated in good faith regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses, in accordance with the terms hereof.  The Prepetition Secured Lender has agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral in accordance with the terms of this Interim Order (including, without limitation, the Budget (subject to any Permitted Variance)), subject to the terms and conditions set forth herein, including the protections afforded parties acting in "good faith" under Section 363(m) of the Bankruptcy Code.  As a result of such agreement as well as the use, sale, lease, loss or decline in the value of the Prepetition Collateral and the imposition of the automatic stay, the Prepetition Secured Lender is entitled to the adequate protection as and to the extent set forth herein pursuant to Sections 361, 362 and 363 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute

12

reasonably equivalent value and fair consideration for the Prepetition Secured Lender's consent thereto.

K.      **Section 552; Section 506**.  Subject to the entry of the Final Order containing such relief, the Prepetition Secured Lender (i) is entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply to the Prepetition Secured Lender with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral and (ii) is entitled to a waiver of the provisions of Section 506(c) of the Bankruptcy Code.

**NOW, THEREFORE,** on the Motion of the Debtors and the record before the Court with respect to the Motion, including the record made during the Interim Hearing, and with the consent of the Debtors, and the Prepetition Secured Lender, and good and sufficient cause appearing therefor,

**IT IS ORDERED that**:

1.      **Motion Granted.**  The Motion is granted, as set forth herein, on an interim basis in accordance with the terms and conditions set forth herein.  Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2.      **Authorization to Use Cash Collateral**.  The Debtors are authorized to use the Cash Collateral from the period beginning on the Petition Date until the occurrence of the Termination Date (defined below), in each case subject to the terms and conditions of this Interim Order and to the adequate protection granted to or for the benefit of the Prepetition Secured Lender as set forth herein, and in accordance with the 13-week cash flow forecast of cash receipts and disbursements of the Debtors on a consolidated basis for the period commencing on the Petition

Date, attached as **Exhibit A** to this Interim Order (the "Initial Budget," and as such budget may be updated and/or modified from time to time by the Debtors as provided in Paragraph 4 hereto, the "Budget") and for no other purpose.

3.    **Adequate Protection for Prepetition Secured Lender**.    As adequate protection for the interests of the Prepetition Secured Lender in the Prepetition Collateral (including Cash Collateral), solely to the extent of, and in an aggregate amount equal, in each case, to, the diminution in value of such interests, from and after the Petition Date, resulting from, among other things, the use, sale or lease by the Debtors of the Prepetition Collateral (including the use of Cash Collateral) and the imposition or enforcement of the automatic stay of Section 362(a) of the Bankruptcy Code (collectively, "Diminution in Value") the Prepetition Secured Lender shall receive the following (collectively, the "Adequate Protection Obligations"):

(a)    **Replacement Liens**.    The Prepetition Secured Lender is hereby granted, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, replacement security interests in and liens upon (the "Replacement Liens") all of the Debtors' postpetition property which, but for the commencement of the Cases, would constitute Prepetition Collateral (the "Replacement Collateral"); provided that the Replacement Liens shall in each case be subject and subordinate only to (i) the Carve-Out, (ii) any liens that exist on, and are legal, valid, binding, enforceable, perfected, and non-avoidable, as of the Petition Date and are permitted to be senior to the Prepetition Liens (as applicable) pursuant to applicable Prepetition Secured Loan Documents, and (iii) any liens in existence immediately prior to the Petition Date that are legal, valid, enforceable, binding and non-avoidable, and are perfected after the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, and which are permitted to be senior to the Prepetition Liens pursuant to applicable Prepetition Secured Loan Documents, and in each case not including the Prepetition

Liens or the Adequate Protection Liens (such liens described in clauses (ii) and (iii), collectively, and not including any Prepetition Liens or Adequate Protection Liens, the "Prepetition Permitted Liens").

        (b)    **Additional Liens**.  The Prepetition Secured Lender is hereby also granted additional liens on and security interests in (collectively, the "Additional Liens" and, together with the Replacement Liens, the "Adequate Protection Liens") all tangible and intangible property of the Prepetition Secured Lender other than the property set forth in Paragraph 3(a) above, whether existing on or as of the Petition Date or thereafter acquired, subject only to (i) the Carve-Out, (ii) any legal, valid, binding, enforceable, perfected, and non-avoidable liens in existence on or as of the Petition Date and (iii) any legal, valid, binding, enforceable, and non-avoidable liens that are perfected after the Petition Date as permitted by Section 546(b) of the Bankruptcy Code (collectively, the "Additional Collateral" and, together with the Replacement Collateral, the "Adequate Protection Collateral"), provided that the Additional Liens shall not attach to any avoidance actions or claims under Sections 502(d), 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable state law (collectively, the "Avoidance Actions"); and provided further, that, subject to the entry of the Final Order, the Additional Liens shall attach to all proceeds of Avoidance Actions.

        (c)    **Adequate Protection Superpriority Claims**.  The Prepetition Secured Lender is hereby granted, subject only to payment of the Carve-Out, an allowed superpriority administrative expense claim (each  an "Adequate Protection Superpriority Claim" and, collectively, the "Adequate Protection Superpriority Claims") pursuant to Section 507(b) of the Bankruptcy Code against the Debtors in each of the Cases or any Successor Case (as defined below).  The Adequate Protection Superpriority Claims shall include all amounts incurred by the

15

Prepetition Secured Lender for reasonable fees and expenses for one primary law firm and one local counsel (which fees and expenses shall be subject to review and a reasonable opportunity to object by the Committee and the U.S. Trustee).  Subject only to the Carve-Out, and except as provided below, the Adequate Protection Superpriority Claims shall have priority over any and all administrative expenses, adequate protection claims and other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in Sections 105(a), 326, 328, 330, 331, 503(b), 507(b), 726, and 1114 of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under the Bankruptcy Code.  Other than the Carve-Out, no cost or expense of administration of the Cases shall be senior to, or *pari passu* with, any of the Adequate Protection Superpriority Claims.

Subject only to (and only to the extent of) any timely and successful Challenge (defined below), all Adequate Protection Obligations and any other payments made to the Prepetition Secured Lender shall be, as applicable, indefeasible and/or irrevocable when made and free and clear of all liens and claims, including, without limitation, any claims covered by the Carve-Out.

Notwithstanding anything to the contrary herein, with respect to nonresidential real property leases, no Replacement Liens, Additional Liens or other liens or encumbrances shall be granted or extended to such leases under this Interim Order, except as permitted by the applicable lease or pursuant to applicable law, but in any event, any such lien is hereby granted on the economic value of or proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests in accordance with the terms of this Interim Order. Notwithstanding anything to the contrary herein, the rights of the Prepetition Secured Lender to enter onto the

Debtors' leased premises shall be limited to (a) any such rights agreed in writing by the applicable landlord pursuant to any separate agreement by and between such landlord and the Prepetition Secured Lender, as applicable, (b) the rights the Prepetition Secured Lender has under applicable non-bankruptcy law, if any, and (c) such rights as may be granted by the Court on a separate motion with notice to the applicable landlords of the leased premises appropriate under the circumstances.

Nothing in this Interim Order affects or impairs any valid and enforceable rights of setoff of United Natural Foods, Inc. and/or its affiliates and subsidiaries in existence as of the Petition Date.

4.     **Budget; Reporting**.

No later than the Monday following the Petition Date, the Debtors shall deliver to the Prepetition Secured Lender and its counsel, a cash flow forecast of the cash receipts and disbursements of the Debtors on a consolidated basis for the following 13-week period (the "Initial Postpetition Budget" and "Proposed Budget"), which shall be in form and substance reasonably satisfactory to the Prepetition Secured Lender.  If no objection to the Proposed Budget is received by the Debtors from the Prepetition Secured Lender within three (3) business days of receipt thereof (such period, the "Budget Objection Period"), then upon expiration of the Budget Objection Period, the Proposed Budget shall become the Budget, which will be in effect for four calendar weeks; provided that, in the event the Prepetition Secured Lender objects to the Proposed Budget during the Budget Objection Period, then the Budget in effect immediately prior to the distribution by the Debtors of the Proposed Budget shall continue to be in effect until any such objection is resolved. Following the receipt of the Initial Postpetition Budget, an updated cash flow forecast shall be delivered to the Prepetition Secured Lender on Monday, every four weeks thereafter.

72142586.3

No later than the Thursday of each calendar week commencing on the first Thursday following the first full Week,[4] the Debtors shall deliver to the Prepetition Secured Lender a variance report comparing, on a line item basis, actual results to the Budget for the previous individual Week on a weekly, cumulative, and four-week trailing basis.

The Debtors shall test the Budget on the Thursday following the first four (4) full Weeks on a four-week trailing basis (each such four week period, the "Budget Period") and every other Thursday thereafter; provided, that, under no circumstances shall any Professional (defined below) fees and out-of-pocket expenses be tested as part of the Budget.  So long as no Termination Event (defined below) has occurred, the Debtors shall be authorized to use Cash Collateral in accordance with the Budget and this Interim Order in an amount that would not cause actual disbursements to be more than twenty-percent (20%) in excess of the disbursements included in the Budget for any Budget Period (the "Permitted Variance").

In addition, the Debtors shall deliver to the Prepetition Secured Lender any reporting currently required to be delivered pursuant to the Prepetition Secured Loan Documents, as and when due or requested thereunder, including any grace periods.

5.      **Adequate Protection Replacement Lien Perfection**.  Subject to Paragraph 7 of this Interim Order, this Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities

---

[4] For purposes of this Paragraph 4, "Week" means the seven-day period beginning on a Monday and ending on the following Sunday.

granted herein.  Notwithstanding the foregoing, the Prepetition Secured Lender may, in its sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and are hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Cases.  The Debtors shall execute and deliver to the Prepetition Secured Lender all such financing statements, mortgages, security agreements, notices and other documents as the Prepetition Secured Lender may request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the Adequate Protection Liens.  The Prepetition Secured Lender may, in its sole discretion, file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

6.      **Priority of Adequate Protection Liens and Adequate Protection Superpriority Claims**.  The Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims granted to the Prepetition Secured Lender herein shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any other lien, security interest or administrative claim under Section 364 of the Bankruptcy Code or otherwise.

7.      **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**. The stipulations, admissions, agreements, releases and waivers contained in this Interim Order,

72142586.3

including the stipulations in Paragraph G of this Interim Order (the "Stipulations"), are and shall be irrevocably binding upon the Debtors and any of the Debtors' successors, including, without limitation, any chapter 7 or chapter 11 trustee, examiner, or other estate representative and all parties in interest and all of their respective successors in interest and assigns, including, without limitation, any Committee, unless, and solely to the extent that, a party in interest with requisite standing and authority (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so) (i) has timely commenced and properly filed an appropriate contested matter or adversary proceeding and timely filed the proper pleadings under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations on the use of Cash Collateral herein, including the Investigation Budget (defined below)), challenging any of the Stipulations, including those related to the amount, validity, enforceability, extent of any of the Prepetition Indebtedness or the validity, enforceability, perfection or priority of any of the Prepetition Liens, respectively, or otherwise asserting any objections, claims or causes of action on behalf of the Debtors' estates against the Prepetition Secured Lender relating to any of the Prepetition Indebtedness or the Prepetition Liens, respectively (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge"), on or before the earlier of (x) with respect to parties in interest other than the Committee, seventy-five (75) calendar days after the date of entry of this Interim Order and (y) with respect to the Committee, sixty (60) calendar days after the date of entry of this Interim Order (the "Challenge Period Termination Date"), and (ii) the Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding, and any such judgment has become final and is not subject to any further review or appeal. Notwithstanding the foregoing, if

the Cases are converted to chapter 7 cases, or if a chapter 11 trustee is appointed with respect to the Cases before the Challenge Period Termination Date, then the chapter 7 trustee or the chapter 11 trustee, as applicable, shall have until the later of the Challenge Period Termination Date or ten (10) days after such trustee's appointment to assert a Challenge.  For the avoidance of doubt, any chapter 7 or 11 trustee appointed or elected in these Cases prior to the Challenge Period Termination Date shall, until the Challenge Period Termination Date and thereafter for the duration of any timely and property commenced Challenge (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party to such proceeding and shall not be bound by the acknowledgments, admissions, confirmations, stipulations and waivers that are the subject of such timely and properly commenced Challenge.  To the extent the Stipulations (or any of them), in each case with respect to any of the Prepetition Indebtedness, Prepetition Liens, or the Prepetition Secured Lender are (a) not subject to a Challenge timely and properly commenced prior to the Challenge Period Termination Date or (b) subject to a Challenge timely and properly commenced prior to Challenge Period Termination Date, to the extent any such Challenge does not result in a final and judgment or order of the Court that is inconsistent with such Stipulations, then, in each case, without further notice, motion or application to, or order of, or hearing before, the Court and without the need or requirement to file any proof of claim:  (a) any and all such Challenges by any party shall be deemed to be forever waived, released, and barred; and (b) all of the Stipulations and all other stipulations, waivers, releases, admissions, agreements and affirmations set forth in this Interim Order (or any not properly and timely challenged) shall be of full force and effect and shall be binding, conclusive and final on any person, entity or party in interest, including any Committee, in the Cases, and their successors and assigns, and in any Successor Case (defined below) for all

purposes and shall not be subject to challenge or objection by the Committee or any other party-in-interest, including, without limitation, any trustee, responsible individual, examiner or other representative of the Debtors' estates.  If any such Challenge is timely and properly commenced, the stipulations, waivers, releases, admissions, agreements and affirmations contained in this Interim Order (and in the Final Order), including the Stipulations, shall nonetheless remain binding and preclusive on the Debtors' estates, including any Committee and any other person or entity, except, and solely to the extent, that such Stipulations were specifically, expressly and successfully challenged in such timely and properly filed Challenge, as and when originally filed (ignoring any relation back principles), and determined by a final order of the Court to be disallowed.  The filing of a motion seeking standing to assert a Challenge before the Challenge Period Termination Date, which attaches a proposed Challenge, shall extend the Challenge Period Termination Date with respect to that party until two (2) business days after the Court rules on the standing motion, or such other time period ordered by the Court in approving the standing motion.  Notwithstanding anything to the contrary herein, the right to commence any Challenge under this Interim Order (or the Final Order) is only preserved as against any particular Prepetition Indebtedness, Prepetition Collateral and/or the Prepetition Secured Lender to the extent such Challenge is commenced timely and properly prior to the Challenge Period Termination Date, and solely in respect of such Prepetition Indebtedness, Prepetition Collateral, or the Prepetition Secured Lender that is the subject of such timely and properly commenced Challenge, and is otherwise waived as set forth in this Paragraph 7.  All remedies or defenses of any party with respect to any Challenge are hereby preserved.  Nothing in this Interim Order (or the Final Order) will vest or confer on any person, including any Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Challenge with respect to the amount,

22

validity, or enforceability of the Prepetition Indebtedness or the validity, enforceability, perfection or priority of the Prepetition Liens, and an order of the Court (or any other court of competent jurisdiction) conferring such standing on a Committee or other party in interest shall be a prerequisite for the prosecution of a Challenge by the Committee or such other party in interest.

8.    **Carve-Out**.

(a)    **Carve-Out**.  Subject to the terms and conditions contained in this Paragraph 8, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims, which have the relative lien and payment priorities as set forth herein, shall, in any event, in all cases be subject and subordinate to a carve-out (the "Carve-Out"), which shall be comprised of the following:  (i) any fees payable to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code; (ii) all accrued and unpaid fees and out-of-pocket expenses of each professional retained in the Cases pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code by the Debtors or their estates and any Committee pursuant to an order of the Court (each, a "Professional"), incurred in accordance with the Budget on or prior to the occurrence of a Carve-Out Event (defined below); (iii) after the occurrence of a Carve-Out Event, all accrued and unpaid fees and out-of-pocket expenses incurred by the Professionals in an aggregate amount for all such Professionals, not to exceed $50,000 (the "Post-Carve-Out Notice Cap"), and (iv) any and all reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code not to exceed $50,000, in each case, to the extent allowed by the Court at any time; provided, that, the Carve-Out shall not include any bonus, transaction, success fees, completion fees, substantial contribution fees, or any other fees of similar import of any of the foregoing for Professionals.  Nothing herein shall be construed to impair the right of any party to object to the reasonableness of any fees or out-of-pocket expenses by any such Professionals or

23

any other person or entity.  For purposes hereof, a "Carve-Out Event" shall occur upon the delivery of a written notice of the occurrence and continuance of a Termination Event to (a) the Debtors, (b) the Debtors' counsel, (c) the U.S. Trustee, (d) counsel to the Committee, if any, and (e) counsel to the Prepetition Secured Lender (collectively, the "Carve-Out Notice Parties"), stating that a Termination Event has occurred and that the Debtors' ability to pay Professionals is now subject to the Carve-Out (a "Termination Notice").  Upon the delivery of a Termination Notice, the Debtors shall provide immediate notice by email to all Professionals informing them that a Carve-Out Event has occurred and that the Debtors' ability to pay Professionals is subject to the Carve-Out.  A waiver of a Termination Event triggering a Carve-Out Event shall constitute the cancellation of such Carve-Out Event allowing the Debtors to pay allowed fees and out-of-pocket expenses of Professionals, as the same may be due and payable, without reducing the Carve-Out.

9.  **Investigation Budget**.  Other than the Investigation Budget, which may be used solely as provided in this Paragraph 9, no portion of the Carve-Out, including the Post-Carve-Out Notice Cap, and no proceeds of any Prepetition Collateral or Adequate Protection Collateral, including the Cash Collateral, may be used, directly or indirectly, to (i) pay any professional fees or expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Prepetition Secured Lender; (ii) contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of any amount due under this Interim Order (or the Final Order) or the Prepetition Secured Loans or the liens or claims granted under this Interim Order (or the Final Order) or the Prepetition Secured Loans; (iii) assert any claims or defenses or any other causes of action against the Prepetition Secured Lender or its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors, including formal discovery proceedings in anticipation thereof; (iv) prevent, hinder,

or otherwise delay the Prepetition Secured Lender's assertion, enforcement, or realization on the Adequate Protection Collateral or the Prepetition Collateral in accordance with the Prepetition Secured Loan Documents or this Interim Order; (v) seek to modify any of the rights granted to the Prepetition Secured Lender hereunder or under the Prepetition Secured Loan Agreements, in the case of each of the foregoing clauses (i) through (v), without the consent of the Prepetition Secured Lender; or (vi) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (x) approved by an order of the Court and (y) permitted under this Interim Order.  Notwithstanding the foregoing, the Committee, if any, and its advisors may investigate (but not prepare, initiate or prosecute), prior to the Challenge Period Termination Date, the Prepetition Liens and any causes of action in connection therewith at an aggregate expense for such investigation not to exceed $25,000 (the "Investigation Budget").

10.     **Payment of Compensation**.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any of the Debtors or any Committee or shall limit or otherwise affect the right of the Prepetition Secured Lender to object to the allowance and payment of any such fees and expenses.  So long as no Termination Event exists, the Debtors shall be permitted to pay compensation and reimburse expenses allowed and payable under Sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable and the same shall not reduce the Carve-Out.

11.     **Section 506(c) Claims.**  Subject to and effective upon entry of the Final Order, except to the extent of the Carve Out (solely to the extent expressly set forth herein), as a further condition of the Debtors' authorization to use the Cash Collateral, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged or

assessed against or recovered from the Prepetition Secured Lender, the Adequate Protection Collateral, or the Prepetition Collateral pursuant to Section 506(c) of the Bankruptcy Code or any similar principle of law. No action, inaction, or acquiescence by the Prepetition Secured Lender, including permitting the use of Cash Collateral to fund the Debtors' ongoing operations, shall be construed as consent to a charge, lien, assessment or claim against, or in respect of, the Adequate Protection Collateral or the Prepetition Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise.

12.    **Section 552**.  Subject to and effective upon the entry of a Final Order, the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Lender with respect to (i) proceeds, products, offspring, or profits of any of the Prepetition Collateral, including the Cash Collateral, or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Prepetition Collateral.

13.    **Survival of Certain Provisions**.  In the event of the entry of any order converting any of these Cases into a Successor Case, the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall continue in these proceedings and in any Successor Case, and/or upon the dismissal of any of the Cases or any Successor Case, and such Adequate Protection Liens and Adequate Protection Superpriority Claims shall maintain their respective priorities as provided by this Interim Order and shall be valid and enforceable against any trustee or any other estate representative elected or appointed in the Cases, or in any Successor Case.  For purposes hereof, a "Successor Case" shall mean any successor cases to the Cases, including, but not limited to, any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings relating to any of the Cases.

14.     **Termination Events**.  The Debtors' right to use Cash Collateral shall automatically terminate (the date of such termination, the "Termination Date"), without further notice or court proceeding, on the earliest to occur of any of the events set forth below (each such event, a "Termination Event"), in each case unless waived in writing by the Prepetition Secured Lender:

(i)     this Interim Order (unless replaced by the Final Order, in which case, the Final Order) ceases to be in full force and effect for any reason;

(ii)     by the date that is seven (7) calendar days after the Petition Date, if the Debtors have not filed a motion seeking to extend the period to assume or reject the Debtors' unexpired leases of non-residential real property (the "Real Property Leases") by an additional ninety (90) calendar days (the "Lease Extension Motion");

(iii)     the Debtors file a motion under section 365 of the Bankruptcy Code to reject any Real Property Lease without the consent of the Prepetition Secured Lender;

(iv)     the date that is thirty (30) calendar days after the Petition Date if (x) the Final Order, in form and substance acceptable to the Prepetition Secured Lender (such order, the "Final Order"), has not been entered by the Court on or prior to such date and (y) the Bankruptcy Court has not entered an order approving the Lease Extension Motion on or prior to such date;

(v)     the Debtors file a plan of reorganization,  a plan of liquidation, or a combined plan and disclosure statement (the "Plan") that is not acceptable to the Prepetition Secured Lender;

(vi)     the Court shall not have entered an order confirming the Plan on or before June 1, 2020;

(vii)     the effective date of the Plan shall not have occurred on or before June 15, 2020;

(viii)    the Debtors file a motion to sell any of their assets pursuant to section 363 of the Bankruptcy Code that is not acceptable to the Prepetition Secured Lender;

(ix)    by the date that is fourteen (14) days days from the Petition Date, if Debtors have not filed one or more motions (each a "Sale Motion"), in form and substance acceptable to the Prepetition Secured Lender, requesting (x) an order or orders from the Bankruptcy Court (each a "Bid Procedures Order") approving the proposed bid procedures attached to the Sale Motion(s) related to the sale of substantially all of the assets of the Debtors (the "Bid Procedures"), and (y) an order from the Bankruptcy Court (the "Sale Order") approving the sale of all or substantially all of the Debtors' assets to the highest and best bidder, or bidders, for such assets pursuant to Section 363 of the Bankruptcy Code;

(x)    by the date that is thirty-five (35) days from the Petition Date, if the Debtors have not obtained the Bid Procedures Order(s), in form and substance reasonably satisfactory to the Prepetition Secured Lender;

(xi)    by the date that is 55 days from the Petition Date, if the Debtors have not completed an auction for their assets in accordance with the Bid Procedures. The Debtors shall declare a "winning bidder" and a "back-up bidder" for their assets in consultation with the Prepetition Secured Lender.  The terms of each "winning bid" and "back-up" bid shall be acceptable to the Prepetition Secured Lender and shall, among other things, provide for proceeds from the sale(s) in a minimum amount satisfactory to the Prepetition Secured Lender;

(xii)    by the date that is 75 days from the Petition Date, if the Bankruptcy Court has not entered the Sale Order(s) approving the winning bid(s) resulting from the auction;

(xiii)    by the date that is 85 days from the Petition Date, if the Debtors have not consummated the sale(s) of their assets to the winning bidder(s) at the auction;

(xiv)   the failure of the Debtors to comply in any material respect with a provision of this Interim Order or the Final Order (as applicable), including the Budget (subject to any Permitted Variance);

(xv)   the dismissal of any of the Cases, the conversion of any Case to a case under chapter 7 of the Bankruptcy Code, the appointment in any Case of a trustee or examiner under chapter 11 of the Bankruptcy Code, the Court shall abstain from hearing any of the Cases in accordance with Section 305 of the Bankruptcy Code, or any of the Debtors shall file a motion or other pleading, or support any motion or other pleading filed by any other party, seeking any of the foregoing relief;

(xvi)   an order of the Court is entered (or any of the Debtors shall seek an order) reversing, staying, vacating, or otherwise amending, supplementing, or modifying this Interim Order or the Final Order without the prior written consent of the Prepetition Secured Lender;

(xvii)   the Debtors shall create, incur, or suffer to exist any postpetition liens or security interests on any Adequate Protection Collateral other than those specified herein;

(xviii)   other than with respect to the Carve-Out, the Debtors shall create, incur, or suffer to exist any claim or lien *pari passu* with or senior to the Adequate Protection Liens or the Adequate Protection Superpriority Claims while any portion of the Prepetition Indebtedness or the Adequate Protection Obligations remain outstanding, or the Court shall grant any application by any party seeking payment of any claim on a superpriority administrative claim basis *pari passu* with or senior to the Adequate Protection Superpriority Claims, without the written consent of the Prepetition Secured Lender;

(xix)   the Adequate Protection Liens or the Adequate Protection Superpriority Claims shall cease to be valid, perfected, and enforceable in all respects or the filing by any Debtor

29

of any motion, pleading, application, or adversary proceeding challenging the validity, enforceability, perfection, or priority of the Prepetition Liens securing the Prepetition Indebtedness or asserting any other cause of action against and/or with respect to the Prepetition Indebtedness, the Prepetition Secured Lender's claim in respect of such Prepetition Indebtedness, or the Prepetition Collateral securing such Prepetition Indebtedness (or if the Debtors support any such motion, pleading, application, or adversary proceeding commenced by any third party);

(xx)    the Debtors shall file or the Court shall grant any application, motion or borrowing request seeking to:  (i) incur, without the written consent of the Prepetition Secured Lender, any indebtedness from any party secured by a lien on, or, except for the Carve-Out, otherwise having a claim against or recourse to, as the case may be, the Debtors, the Prepetition Collateral or the Adequate Protection Collateral, unless such liens or claims are junior and subordinated in all respects to the Prepetition Liens, the Prepetition Indebtedness, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims; or (ii) use Cash Collateral on a nonconsensual basis;

(xxi)    the entry of an order by the Court or any other court having jurisdiction to do so granting relief from or modifying the automatic stay applicable under Section 362 of the Bankruptcy Code or otherwise allowing a holder or holders of any liens or security interests, to foreclose or otherwise realize upon their liens or security interests in any Adequate Protection Collateral or Prepetition Collateral;

(xxii)   the Debtors' exclusive right to file and solicit acceptance of a chapter 11 plan terminates; or

(xxiii) any Debtor shall make any material payment (including any Adequate Protection Payment) on or in respect of any prepetition obligations other than, in accordance with

30

the Budget (subject to any Permitted Variance), including pursuant to this Interim Order or any other interim or final order entered with respect to the Debtors' "first day" motions (it being understood that any such motions and orders must be in form and substance reasonably acceptable to the Prepetition Secured Lender).

15.    **Remedies Upon a Termination Event**.

Upon the occurrence or continuation of a Termination Event, unless such Termination Event has been waived in writing the Prepetition Secured Lender, then, without further order or relief from the Court:  (i) the Debtors' authority to use Cash Collateral shall automatically terminate and (ii) five (5) business days following delivery of a Termination Notice (the "Waiting Period") via electronic mail and facsimile by the Prepetition Secured Lender to the Carve-Out Notice Parties the automatic stay under Section 362 of the Bankruptcy Code shall, without further order or authorization of the Court, be automatically vacated and modified to the extent necessary to permit the Prepetition Secured Lender to exercise all rights and remedies against the Adequate Protection Collateral and the Prepetition Collateral (including the Cash Collateral) in accordance with the Prepetition Secured Loan Documents, this Interim Order (or the Final Order (as applicable)) and applicable law.  During the Waiting Period, the Debtors shall not use any Cash Collateral to pay any expenses except those which are necessary to preserve the Debtors' going concern value, solely in accordance with the Budget (subject to any Permitted Variance) and subject to the approval of the Prepetition Secured Lender.

Notwithstanding anything to the contrary in the previous paragraph, the Debtors may seek a hearing during the Waiting Period to contest whether a Termination Event has occurred or to seek Court approval of an order approving the use of Cash Collateral over the objection of

72142586.3

the Prepetition Secured Lender; provided that nothing herein shall impair the right of any party, including the Prepetition Secured Lender, to object to such relief on any basis.

16. **Proofs of Claim, etc**.  The Prepetition Secured Lender shall not be required to file proofs of claim in any of the Cases or any Successor Cases for any claim allowed herein.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Cases or any Successor Cases shall not apply to the Prepetition Secured Lender.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or any Successor Cases to the contrary, the Prepetition Secured Lender is hereby authorized and entitled, in its sole and absolute discretion, but not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or any Successor Cases for any claim allowed herein.  For the avoidance of doubt, any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor.

17. **Cash Management**.  On and after the Petition Date, (y) the Debtors shall continue use of a cash management system that is the same as or substantially similar to their prepetition cash management system, and (z) any material changes to the Debtors' cash management system must be acceptable to the Prepetition Secured Lender in its discretion.

18. **Miscellaneous**.

(a) **Good Faith**.  The Prepetition Secured Lender has acted in good faith (including, without limitation, for the purposes of section 363(m) of the Bankruptcy Code) in connection with this Interim Order and their reliance on this Interim Order has been and is in good faith.

(b)     **No Release of Guarantors.**  Nothing contained in this Interim Order shall be deemed to terminate, modify or release any obligations of any non-debtor guarantor to the Prepetition Secured Lender with respect to their respective obligations under any of the Existing Agreements.

(c)     **Binding Effect**.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the Prepetition Secured Lender, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 case.

(d)     **No Waiver**.  The failure of the Prepetition Secured Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order or the Prepetition Secured Loan Documents shall not constitute a waiver of the Prepetition Secured Lender's rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the Prepetition Secured Lender under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court.

(e)     **Modification of Automatic Stay.**  The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the Adequate Protection Liens and incur the Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as may be needed to assure the perfection and priority of the liens

72142586.3

granted herein; and (c) permit the Debtors to incur all liabilities and obligations under the terms of this Interim Order.

(f)     **No Third Party Rights**.    Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(g)     **No Marshaling**.    Subject to the entry of the Final Order, the Prepetition Secured Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Adequate Protection Collateral or the Prepetition Collateral, as applicable.

(h)     **Survival of Interim Order**.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan in the Cases, (ii) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Cases, (iv) withdrawing of the reference of any of the Cases from the Court or (v) providing for abstention from handling or retaining of jurisdiction of any of the Cases in the Court.    The terms and provisions of this Interim Order and any protections granted to or for the benefit of the Prepetition Secured Lender (including the Adequate Protection Liens and the Adequate Protection Superpriority Claim), shall continue in full force and effect notwithstanding the entry of such order, and such protections for the Prepetition Secured Lender (including the Adequate Protection Liens and the Adequate Protection Superpriority Claims) shall maintain their priority as provided by this Interim Order and the Prepetition Secured Loan Documents (as the case may be) until all

of the Prepetition Indebtedness has been indefeasibly paid and satisfied in full in cash and discharged.

(i)      **Enforceability**.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(j)      **No Waivers or Modification of Interim Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the Prepetition Secured Lender, and no such consent shall be implied by any other action, inaction or acquiescence of the Prepetition Secured Lender.  This Interim Order may not be modified to alter relative lien priority of the Adequate Protection Liens.

(k)      **Waiver of any Applicable Stay.**  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

19.      **Final Hearing**.

The Final Hearing to consider entry of the Final Order and final authorization for the Debtors' use of Cash Collateral is scheduled for February 26, 2020 at 10:00 a.m. (EST) at the United States Bankruptcy Court for the District of Delaware.  If no objections to the relief sought at the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by the Court.

Within three (3) business days after entry of this Interim Order, the Debtors shall serve, or cause to be served, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies

72142586.3

of this Interim Order and the Motion (to the extent the Motion was not previously served on a party), on the Notice Parties and to any other party that has filed a request for notices with the Court prior thereto and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than February 19, 2020 at 4:00 p.m. (EST), which objections shall be served on or before such date on: (i) counsel for the Debtors and (ii) the Notice Parties.

20. **Retention of Jurisdiction**. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

**Dated: January 28th, 2020**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

72142586.3