## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUCKY'S MARKET PARENT COMPANY, *et al.*, | Case No. 20-10166 (JTD) |
| Debtors.[1] | (Jointly Administered) |
| | **RE: Docket Nos. 13 and 51** |

### ATA FORUM LOUISVILLE KY, LLC'S (A) OBJECTION TO INTERIM ORDER AUTHORIZING (I) PROCEDURES FOR STORE CLOSING SALES, AND (II) ASSUMPTION OF THE LIQUIDATION CONSULTING AGREEMENT, AND (B) NOTICE OF DEFAULT UNDER STORE CLOSING PROCEDURES

ATA Forum Louisville KY, LLC ("**Landlord**"), by and through its undersigned counsel, hereby submits this objection to the *Interim Order Authorizing (I) Procedures for Store Closing Sales and (II) Assumption of the Liquidation Consulting Agreement* [Docket No. 51] (the "**Interim Store Closing Procedures Order**") entered by the Court on January 28, 2020. In addition, by this objection, in accordance with Section 18 of the Store Closing Procedures, Landlord hereby provides notice that the Debtors and Liquidation Consultant[2] have breached the Store Closing Procedures by, among other things, (i) improperly removing fixtures and other property that is

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Lucky's Market Parent Company, LLC (2055), Lucky's Farmers Market Holding Company, LLC (5480), Lucky's Market Operating Company, LLC (7064), LFM Stores LLC (3114), Lucky's Farmers Market, LP (0828), Lucky's Farmers Market Resource Center, LLC (7711), Lucky's Market Holding Company 2, LLC (0607), Lucky's Market GP 2, LLC (9335), Lucky's Market 2, LP (8384), Lucky's Market of Longmont, LLC (9789), Lucky's Farmers Market of Billings, LLC (8088), Lucky's Farmers Markets of Columbus, LLC (3379), Lucky's Farmers Market of Rock Hill, LLC (3386), LFM Jackson, LLC (8300), Lucky's Farmers Market of Ann Arbor, LLC (4067), Lucky's Market of Gainesville, LLC (7877), Lucky's Market of Bloomington, LLC (3944), Lucky's Market of Plantation, LLC (4356), Lucky's Market of Savannah, GA, LLC (1097), Lucky's Market of Traverse, City, LLC (2033), Lucky's Market of Naples, FL, LLC (8700), and Sinoc, Inc. (0723).

[2]     Unless otherwise defined herein, all capitalized terms used in this Objection will have the meanings given to such terms in the Interim Store Closing Procedures Order.

*(cont'd)*

owned by Landlord, and (ii) causing significant damage to the premises in the process of such improper removal.[3]

In support of this Objection, Landlord states as follows:

### The Louisville Lease

1.      On or around July 13, 2013, Landlord and Debtor, Lucky's Farmers Market of Louisville, LLC ("**Louisville Debtor**"), entered into that certain *Shopping Center Lease* dated July 30, 2013 (the "**Louisville Lease**").   A complete and authentic copy of the Louisville Lease is attached hereto as **Exhibit A**.

2.      Through the Louisville Lease, Landlord leased to the Louisville Debtor approximately 30,000 square feet of retail space (the "**Louisville Premises**") located at 100-300 Hurstbourne Parkway in Louisville, Jefferson County, Kentucky.

3.      Under the Louisville Lease, Landlord funded a $1,203,800 ($40/square foot) allowance for the tenant improvements and $563,200 in landlord work, including the purchase and installation of walk-in refrigerators, freezers, built-in check-out stations, built-in deli cabinets/displays, plumbing fixtures, and copper piping and other connectivity infrastructure. Effectively, Landlord paid for the entire build-out of the Louisville Premises.

4.      The Louisville Lease provides that upon vacating the Louisville Premises, the Louisville Debtor may remove personal property, but that all other "alterations and additions to the Premises by Tenant" shall remain property of Landlord.  Lease, ¶11.

5.      Kentucky law governs the Louisville Lease.

---

[3]      Landlord fully reserves its right to seek an administrative claim against the Debtors' estates based on the issues raised by this Objection.

QB\149293.00015\57749125.1

## Store Closing Procedures

6.      On January 27, 2020, (the "**Petition Date**"), the Debtors commenced these cases by filing petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").

7.      On the same day, the Debtors filed their *Motion of Debtors for Approval of (I) Procedures for Store Closing Sales and (II) Assumption of the Liquidation Consulting Agreement* [Docket No. 13] (the "**Closing Procedures Motion**").

8.      Through the Closing Procedures Motion, the Debtors sought, among other relief, entry of an order establishing procedures under which the Debtors could close some of its stores and sell the Debtors' personal property associated with such stores.  The Closing Procedures Motion also sought the extraordinary relief of having this Court declare all lease provisions unenforceable if such lease provisions are inconsistent with the Debtors' Store Closing Procedures.

9.      In the Closing Procedures Motion, the Debtors alleged that they notified "parties affected by the closure of the Closing Stores" before the Petition Date.  Closing Procedures Motion, ¶ 16.

10.     The Debtors did not provide any prepetition notice to Landlord.

11.     The next day, January 28, 2020, the Court entered its Interim Store Closing Procedures Order, establishing, on an interim basis, the Store Closing Procedures.

12.     The Store Closing Procedures authorized the Debtors and the Liquidation Consultant to remove and sell

> the movable furniture, ***fixtures***, or other equipment, excluding all property of the landlord[,] including all real property improvements located on the Premises (the "FF&E" and, together with the applicable inventory, the "Store Closing Assets") located at the Closing Stores, and any such transaction shall be free and clear of all liens, claims, interests, and other encumbrances.

Store Closing Procedures, ¶ 4 (emphasis added).

13.    The Louisville Premises was listed as a "Closing Store".

14.    Notwithstanding the use of the word "fixtures" in paragraph 4 of the Store Closing Procedures, the Store Closing Procedures expressly stated that "[n]o property of any landlord or other non-Debtor third party will be removed or sold during the Store Closing Sales."  Store Closing Procedures, ¶ 11.

15.    Astonishingly, the Store Closing Procedures stated that "[t]he Debtors do not have to comply with . . . lease provisions or covenants that are inconsistent with these Store Closing Procedures."  Store Closing Procedures, ¶ 13.

16.    The Store Closing Procedures also reserved the rights of landlords to seek damages against the Debtors based on the Store Closing Procedures.  Store Closing Procedures, ¶ 15.

## **Debtors' Breach of Store Closing Procedures**

17.    Despite the extraordinary relief set forth in the Interim Store Closing Procedures Order, the Debtors made no effort to notify Landlord that the Louisville Lease had been materially altered by the Store Closing Procedures or that the Debtors intended to significantly impair Landlord's rights.  Instead, the Debtors allege that they simply placed the Interim Store Closing Procedures Order in the regular US Mail to Landlord's corporate headquarters.  *See* Docket No. 108.

18.    On February 12, 2020, Landlord first learned that in conjunction with the Louisville store closing, a Liquidation Consultant was about to enter the Louisville Premises and remove property.  *See* Declaration of Todd B. Tuggle, Esq. (the "**Tuggle Dec**."), attached hereto as **Exhibit B**, at ¶ 6.

19.     Through multiple emails and telephone calls on February 12-14, 2020, representatives from Landlord repeatedly (i) asserted rights to property located on the Louisville Premises, including all fixtures, and (ii) demanded a list of items the Debtors' intended to remove from the Louisville Premises.  *See* Tuggle Dec., ¶¶ 7-21.

20.     Over those three days, the Debtors and the Liquidation Consultant both failed or refused to provide a specific list of items the Debtors' intended to remove.  *See* Tuggle Dec., ¶¶ 7-21.  Therefore, Louisville Landlord had no way to determine whether the Debtors intended to removing Landlord's property in direct violation of the Store Closing Procedures and the Lease.

21.     On February 13, 2020, Maria Woods, in-house counsel for the Debtors, and Mr. Tuggle had a phone call to try to resolve the issues.  In the February 13 phone call, Ms. Woods confirmed that (i) no property would be removed from the Louisville Premises without a representative of Landlord being present, and (ii) if Landlord asserted rights to any property, such property would not be removed pending resolution of the dispute.  *See* Tuggle Dec., ¶¶ 18-19.  Mr. Tuggle stated that the Landlord representative could not be on-site until Tuesday, February 18, 2020, given the holiday weekend.  *See* Tuggle Dec., ¶ 20.

22.     On Friday, February 14, 2020, Debtors' counsel informed Mr. Tuggle that the buyer of the Debtor's personal property may back out of its agreement unless the Debtors are permitted to sell property owned by Landlord and retain all proceeds.  *See* Tuggle Dec., ¶ 21.  Mr. Tuggle informed Debtors' counsel of his conversation with Ms. Woods and that the Louisville Landlord's representative would be on-site on Tuesday, February 18, 2020. *See* Tuggle Dec., ¶ 21.  Debtors' counsel assured Mr. Tuggle that he would inform the alleged buyer of this.  *See* Tuggle Dec., ¶ 21.

23.     On the morning of February 18, 2020, Landlord's representative—Jeremy Hamilton—arrived on the Louisville Premises to participate in the removal of items per the parties'

5

agreement and identify any items that the Landlord claimed it owned, including fixtures comprising part of the realty. *See* Declaration of Jeremy Hamilton (the "**Hamilton Dec.**"), attached hereto as __Exhibit C__, at ¶ 6.

24.    Instead, Mr. Hamilton immediately discovered that over the holiday weekend, the Debtors had surreptitiously "gutted" the Louisville Premises in direct violation of the parties' agreement and the Store Closing Procedures. *See* Hamilton Dec., ¶¶ 7-11.

25.    Mr. Hamilton also discovered that the Debtors had stolen valuable property, including real property fixtures, belonging to Landlord.  *See* Hamilton Dec., ¶¶ 7-11.  Effectively, the Debtors removed every fixture item paid for by Landlord with the construction allows -- i.e., approximately $1.8 million worth of property.

26.    The Debtors and their agents had also removed substantial copper piping, a pile of which was still on the premises and which Mr. Hamilton was able to obtain a photo of.  *See* photograph attached hereto as __Exhibit D__.   Despite Mr. Hamilton's demand to stop removing property, the Debtors' agents instead sprung into "high gear" and forcefully removed these copper pipes and other remaining items from the Louisville Premises, loaded it onto their truck, and drove away. *See* Hamilton Dec., ¶ 12.

27.    Moreover, the Debtors caused significant damage to the Louisville Premises in their hurried and secretive removal of Landlord's property.  *See* Hamilton Dec., ¶ 11.

28.    Mr. Tuggle reached out to both Ms. Woods and Debtors' counsel following the improper removal of Landlord's property.  Neither one has responded.  *See* Tuggle Dec., ¶ 22.

## OBJECTION TO STORE CLOSURE PROCEDURES

29.     As described above, the Store Closure Procedures should be denied or modified for at least the following reasons:

a.     First, the Store Closure Procedures should not authorize the Debtors to remove "fixtures."  By definition, fixtures are part of the real property and belong to the owner of such real property.

b.     Second, the Store Closure Procedures should require the Debtors to specifically list the property that it intends to remove and sell prior to removal and sale.  Given that the Debtors seek to sell property free and clear of all liens, claims, and interest, due process requires that they specifically identify which property they are proposing to remove (in the event Landlord asserts Landlord owns such property) and to sell.

c.     Third, the Store Closure Procedures should provide a mechanism to resolve ownership disputes regarding FF&E located on the applicable premises *prior to* removal and sale. Allowing the Debtors to simply remove whatever they desire and the force Landlords to litigate their damages claims after the fact is inherently unjust and creates a waste of judicial resources.

d.     Fourth, the Store Closure Procedures should provide an absolute right for landlords to be present on their own property during the removal to ensure compliance with the Store Closure Procedures and the applicable leases and to prevent the Debtors' from improperly removing landlord's property.

e.     Finally, the Store Closure Procedures should not override otherwise enforceable lease provisions.  As currently drafted, the Store Closure Procedures override all lease provisions that are inconsistent with the Store Closure Procedures, without specificity or limit. While Debtors may have intended to primarily override "go dark" covenants, the Store Closure

Procedures go much further and could be interpreted to allow (i) the conversion of landlord's property to Debtors' property without due process or compensation.

30.     For the forgoing reasons, Landlord respectfully requests the Court alter the Store Closure Procedures as provided above.

## NOTICE OF DEFAULT

31.     Under Section 18 of the Store Closure Procedures, landlords are required to notify the Debtors that the Debtors or Liquidation Consultant have breached the Store Closure Procedures.

32.     Accordingly, notice is hereby given that the Debtors and the Liquidation Consultant have breached the Store Closure Procedures by, among other things, (i) removing property that does not belong to Debtors, (ii) removing property outside of normal business hours, and (iii) damaging the Louisville Premises in the process of such removal.

33.     Landlord hereby demands that the Debtors cure such defaults within seven (7) days.

34.     Landlord reserves all its rights and remedies, including, without limitation, its rights to seek administrative claims against the Debtors for conversion of Landlord's property and for damage to the Louisville Premises and its right to pursue the Liquidation Consultant for improperly entering the Louisville Premises and removing Landlord's property without consent, and the right to pursue any buyer of Louisville Landlord's property.

QB\149293.00015\57749125.1

WHEREFORE, Landlord respectfully requests the Court modify the Store Closure Procedures as provided herein, and grant Landlord such other and further relief as is just and proper.

Respectfully submitted,

Dated:  February 19, 2019          CIARDI CIARDI & ASTIN
         Wilmington, Delaware

*/s/ Joseph J. McMahon, Jr.*
Daniel K. Astin (No. 4068)
Joseph J. McMahon, Jr. (No. 4819)
1204 N. King Street
Wilmington, Delaware 19801
Tel:  (302) 658-1100
Fax:  (302) 658-1300
jmcmahon@ciardilaw.com

-and-

Isaac M. Gabriel, Esq.
(admitted pro hac vice)
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona  85004-2391
Telephone:  602-229-5200
Facsimile:  602-229-5690

*Attorneys for ATA Forum Louisville KY, LLC*

QB\149293.00015\57749125.1