## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUCKY'S MARKET PARENT COMPANY, LLC, *et al.*,[1] | Case No. 20-10166 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 71** |

**ORDER (I) APPROVING BID PROCEDURES IN CONNECTION WITH THE POTENTIAL SALE OF CERTAIN OF THE DEBTORS' ASSETS, (II) SCHEDULING AN AUCTION AND A SALE HEARING, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) AUTHORIZING THE DEBTORS TO ENTER INTO THE STALKING HORSE AGREEMENT, (V) APPROVING BID PROTECTIONS, (VI) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (VII) GRANTING RELATED RELIEF (ALDI INC.)**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (the "**Debtors**") for entry of an order (this "**Order**") (i) authorizing and approving the Bid Procedures attached hereto as Exhibit 1 (the "**Bid Procedures**") in connection with the sale (the "**Sale**") of certain of the Debtors' assets (the "**Assets**"), (ii) scheduling an auction and hearing to consider the Sale of the Assets, (iii) approving the form and manner of notice thereof, (iv) authorizing the Debtors to enter into the Stalking Horse Agreement (as defined below), (v) approving the Bid Protections (as defined below) in connection therewith, (vi) approving

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Lucky's Market Parent Company, LLC (2055), Lucky's Farmers Market Holding Company, LLC (5480), Lucky's Market Operating Company, LLC (7064), LFM Stores LLC (3114), Lucky's Farmers Market, LP (0828), Lucky's Farmers Market Resource Center, LLC (7711), Lucky's Market Holding Company 2, LLC (0607), Lucky's Market GP 2, LLC (9335), Lucky's Market 2, LP (8384), Lucky's Market of Longmont, LLC (9789), Lucky's Farmers Market of Billings, LLC (8088), Lucky's Farmers Markets of Columbus, LLC (3379), Lucky's Farmers Market of Rock Hill, LLC (3386), LFM Jackson, LLC (8300), Lucky's Farmers Market of Ann Arbor, LLC (4067), Lucky's Market of Gainesville, LLC (7877), Lucky's Market of Bloomington, LLC (3944), Lucky's Market of Plantation, LLC (4356), Lucky's Market of Savannah, GA, LLC (1097), Lucky's Market of Traverse, City, LLC (2033), Lucky's Market of Naples, FL, LLC (8700), and Sinoc, Inc. (0723).

[2] Capitalized terms used as defined terms herein but not otherwise defined shall have the meanings ascribed to them in the Motion or the Bid Procedures, as applicable. In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale (collectively, the "**Contracts**"), and (vii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration and other testimony and evidence submitted by the Debtors in support of the Motion; this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "**Hearing**"); this Court having determined the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor:

THE COURT FINDS THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

C.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors have confirmed their consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), to the entry of a final order by this Court in connection with the Motion, to the

2

extent it is later determined this Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

D.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      The bases for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1, and 6004-1.

F.      Notice of the Motion has been given to: (a) the U.S. Trustee; (b) the holders of the twenty (20) largest unsecured claims against the Debtors; (c) counsel to the Prepetition Secured Lender; (d) counsel to the Stalking Horse Purchaser; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) all state and local taxing authorities with an interest in the Assets; (h) the Attorney General for the State of Delaware; (i) the Securities and Exchange Commission; (j) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (k) all parties known or reasonably believed to have asserted an interest in the Assets; (l) the Contract Counterparties; (m) the Debtors' insurance carriers; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.

G.      Good and sufficient notice of the Motion, including the relief sought therein, and the Hearing was sufficient under the circumstances, and such notice complied with all applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice need be provided. A reasonable opportunity to object or be heard regarding the relief provided in this Order has been afforded to all parties in interest.

H.      The Debtors have articulated good and sufficient reasons for this Court to (i) approve the Bid Procedures, (ii) schedule the bid deadlines and the Auction and the Sale Hearing, (iii) approve the form and manner of notice of the Auction and Sale Hearing, (iv) approve

3

procedures for the assumption and assignment of the Contracts, including notice of the proposed cure amounts, (v) authorize the Debtors to enter into a Stalking Horse Agreement, and (vi) extend to the Stalking Horse Purchaser the Bid Protections, in the exercise of their reasonable business judgment. The entry of this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

I.       The Bid Procedures attached hereto as <u>Exhibit 1</u> are reasonable, appropriate and represent the best method for maximizing value for the benefit of the Debtors, their estates, and their creditors. The Bid Procedures were negotiated at arm's length, in good faith, and without collusion. The Bid Procedures balance the Debtors' interests in emerging expeditiously from the chapter 11 cases while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtors, their estates, their creditors, and other parties in interest. The Bid Procedures comply with the requirements of Local Rule 6004-1(c).

J.       The Debtors have demonstrated compelling and sound business justifications for authorization to (i) enter into that certain Asset Purchase Agreement (as amended, the "**Stalking Horse Agreement**") by and among Debtor Lucky's Market Parent Company and certain of its Debtor affiliates and ALDI INC. (the "**Stalking Horse Purchaser**") and (ii) offer the Stalking Horse Purchaser up to $250,000 of expense reimbursement (for actual out-of-pocket third party expenses) (the "**Expense Reimbursement**") and a topping fee requirement of $250,000 in the event of an Overbid (as defined in the Bid Procedures) (the "**Topping Fee**", together with the Expense Reimbursement, the "**Bid Protections**") on the terms set forth in the Stalking Horse Agreement and this Order. With respect to the Bid Protections, the Court makes the following findings:

a.       the Bid Protections are the product of extensive negotiations between the Debtors and the Stalking Horse Purchaser conducted in good faith and at

4

arm's length, and the Stalking Horse Agreement (including the Bid Protections) are the culmination of a process undertaken by the Debtors and their professionals to negotiate a transaction with a bidder who was prepared to pay the highest price or otherwise best purchase price to date for the Assets to maximize the value of the Debtors' estates;

b.      the Topping Fee and Expense Reimbursement are actual and necessary costs and expenses of preserving the value of the respective Debtors' estates;

c.      the Bid Protections are fair, reasonable, and appropriate in light of, among other things, the size and nature of the proposal Sale under the Stalking Horse Agreement, the substantial efforts that have been and will be expended by the Stalking Horse Purchaser, including the identification and quantification of assets to be included in the Assets, and notwithstanding that the proposed sale is subject to higher and better offers, the substantial benefits the Stalking Horse Purchaser has provided to the Debtors, their estates, their creditors, and all parties in interest, including, among other things, by increasing the likelihood that the best possible price for the Assets will be received;

d.      the Bid Protections were material inducements for, and express conditions of, the Stalking Horse Purchaser's willingness to enter into the Stalking Horse Agreement and were necessary to ensure that the Stalking Horse Purchaser would continue to pursue the proposed acquisition on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding;

e.      the offer of the Bid Protections is intended to promote more competitive bidding by inducing the Stalking Horse Bid, which (i) will serve as a minimum floor bid on which all other bidders can rely with respect to the Assets, (ii) may prove to be the highest or otherwise best available offer for the Assets, and (iii) increases the likelihood that the final purchase price will reflect the true value of the Assets; and

f.      the Stalking Horse Purchaser is unwilling to commit to purchase the Assets under the terms of the Stalking Horse Agreement without approval of the Bid Protections.

K.      The Debtors' performance of certain pre-closing obligations contained in the Stalking Horse Agreement is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound business judgment.

5

L.      The Stalking Horse Purchaser is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, managers, controlling shareholders, or other insider of the Debtors exist between the Stalking Horse Purchaser and the Debtors.

M.      The notice, substantially in the form attached hereto as Exhibit 2, provided by the Debtors regarding the Sale of the Assets by Auction and Sale Hearing (the "**Sale Notice**"), is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time, and place of the Auction (if one is held), (ii) the Bid Procedures and certain dates and deadlines related thereto, (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing, (iv) reasonably specific identification of the assets for sale, (v) instructions for promptly obtaining a copy of the Stalking Horse Agreement, (vi) a description of the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds, (vii) the commitment by the Stalking Horse Purchaser to assume certain liabilities disclosed in the Stalking Horse Agreement (collectively, the "**Assumed Liabilities**"), and (viii) notice of the proposed assumption and assignment of Assigned Contracts to the Stalking Horse Purchaser (or such other Contracts to another Successful Bidder (as defined in the Bid Procedures) arising from the Auction, if any) and the right, procedures, and deadlines for objecting thereto. No other or further notice of the Sale shall be required.

N.      The Motion, this Order, and the Assignment Procedures (as defined below) set forth herein are appropriate and reasonably calculated to provide counterparties to any Contracts to be assumed by the Debtors and assigned to the Successful Bidder with proper notice of the intended

6

assumption and assignment of their Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

O.      Neither the filing of the Motion, entry of this Order, the execution of the Stalking Horse Agreement, the solicitation of bids or the conducting of the Auction in accordance with the Bid Procedures nor any other actions taken by the Debtors in accordance therewith shall constitute a sale of the Assets, which sale will only take place, if at all, following the Sale Hearing.

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      All objections, statements, and reservations of rights with respect to the relief requested in the Motion with respect to the Bid Procedures that have not been withdrawn, waived, or settled, as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled and denied on the merits with prejudice.

**A.      The Bid Procedures**

3.      The Bid Procedures, attached hereto as Exhibit 1, are hereby approved in their entirety and fully incorporated into this Order. The Bid Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale and any party desiring to submit a higher or better offer for the Assets must comply with the terms of the Bid Procedures and this Order. The Bid Procedures shall also govern the terms on which the Debtors will proceed with the Auction and/or Sale pursuant to the Stalking Horse Agreement.

4.      The Stalking Horse Purchaser shall be deemed a Qualified Bidder pursuant to the Bid Procedures for all purposes.

5.      The following dates and deadlines regarding competitive bidding are hereby established (subject to modification in accordance with the Bid Procedures):

7

- (All times are prevailing Eastern Time)

- **February 28, 2020 at 4:00 p.m.:** Debtors to send Cure and Possible Assumption and Assignment Notices to All Contract Counterparties and Notice of the Sale, as well as provide landlords with adequate assurance information for the Stalking Horse Purchaser

- **March 18, 2020 at 4:00 p.m.:** Cure Objection Deadline

- **March 23, 2020 at 4:00 p.m.:** Deadline to submit Bid to be considered for an Auction and for Debtors to notify affected landlords if bids relate to their leases

- **March 24, 2020 at 4:00 p.m.**: Stalking Horse Bid Objection Deadline

- **March 24, 2020:** Advise bidders and Consultation Parties of any Qualified Bids

- **March 26, 2020 at 10:00 a.m.:** Proposed date of Auction

- **March 26, 2020:** Debtors to file Notice of Successful Bidder and Contract Assignment Notices at the conclusion of an Auction, as well as provide landlords with adequate assurance information for the Successful Bidder

- **March 29, 2020 at 4:00 p.m.:** Deadline to file and serve objections to relief requested at Sale Hearing other than Stalking Horse Bid Objections

- **March 30, 2020 at 3:00 p.m.:** Sale Hearing

## B.    Entry into Stalking Horse Agreement

6.    The Stalking Horse Agreement is hereby approved. The Debtors are authorized to enter into the Stalking Horse Purchaser and to pay the Topping Fee and Expense Reimbursement pursuant to the terms and conditions set forth in the Stalking Horse Agreement and this Order. Following the expiration of the Bid Deadline, the Debtors are authorized, but not directed, to enter into the Stalking Horse Agreement.

7.    The Debtors are authorized to perform all of their respective pre-closing obligations under the Stalking Horse Agreement; *provided* that for the avoidance of doubt, approval and consummation of the transactions contemplated by the Stalking Horse Agreement shall be subject to the terms and conditions herein and the entry of an order approving the Sale of the Assets and

8

the satisfaction or waiver of the other conditions to closing on the terms set forth in the Stalking Horse Agreement.

**C.    Approval of the Bid Protections**

8.    The Bid Protections are hereby approved. The Debtors are authorized to pay the Stalking Horse Purchaser the Topping Fee and Expense Reimbursement if and to the extent they become due and payable under the Stalking Horse Agreement and this Order.

9.    The Expense Reimbursement and Topping Fee shall constitute an allowed superpriority administrative expense claim against the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 363, 364(c)(1), 503(b), 507(a)(2), and 507(b). The Debtors' obligation to pay the Expense Reimbursement and the Topping Fee shall survive the termination of the Stalking Horse Agreement and shall be payable only by the Debtors as otherwise provided in the Stalking Horse Agreement.

10.    The Expense Reimbursement and the Topping Fee shall be payable by the Debtors to the Stalking Horse Purchaser as provided in the Stalking Horse Agreement. To the extent not paid earlier, the Expense Reimbursement and Topping Fee shall be payable contemporaneously with the closing of a Sale to a Qualified Bidder who is not the Stalking Horse Purchaser, and prior to any other payments or distributions being made from such Sale proceeds (including, for the avoidance of doubt, prior to any payments or distributions to professionals, or administrative claimants). No further or additional order from the Court shall be required in order to give effect to such provisions relating to the terms of payment of the Expense Reimbursement and the Topping Fee, and the Stalking Horse Purchaser's professional advisors are not obligated to comply with any provisions of the Bankruptcy Code regarding Court approval of professionals fees payable by the Debtors and included in the Expense Reimbursement.

9

11.     Each Debtor's obligations relating to the Bid Protections arising under or in connection with the Stalking Horse Agreement shall be binding and enforceable against each such Debtor and its respective estate, and, as applicable, (i) any of its successor or assigns, (ii) any trustee, examiner, or other representative of the Debtors' estates, (iii) the Debtors, and (iv) any other entity vested or re-vested with any right, title, or interest in or to a material portion of the assets directly or indirectly owned by the Debtors or any other person claiming any rights in or control over a material portion of such assets (each, a "**Debtor Successor**") as if such Debtor Successor was the Debtors.

**D.     The Auction**

12.     As further described in the Bid Procedures, if a Qualified Bid, other than the Bid of the Stalking Horse Purchaser, is received by the Bid Deadline, the Debtors will conduct the Auction at **10:00 a.m. (prevailing Eastern Time) on March 26, 2020**, at the offices of the Debtors' counsel, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801 or such later time on such day or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids, if a Qualified Bid is timely received. The Debtors are authorized, subject to the terms of this Order and the Bid Procedures, to take actions reasonably necessary to conduct and implement the Auction.

13.     If the Debtors do not receive a Qualified Bid (other than the Bid of the Stalking Horse Purchaser): (i) the Auction will not occur, (ii) the Stalking Horse Agreement will be deemed the Successful Bid for the Assets, subject to the termination rights under the Stalking Horse Agreement, and (iii) the Debtors shall be authorized to seek approval of the Sale to the Stalking Horse Purchaser at the Sale Hearing.

10

72322218.5

14.     Only Qualified Bidders (including, for the avoidance of doubt, the Stalking Horse Purchaser and any authorized agents for the Stalking Horse Purchaser or Qualified Bidders) will be entitled to make any Bids at the Auction.

15.     The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed or videotaped.

16.     Each Qualified Bidder (including, for the avoidance of doubt, the Stalking Horse Purchaser) participating in the Auction must confirm on the record at the Auction that it (a) has not engaged in any collusion with respect to the Sale or bidding (including it has no agreement with any other Bidder or Qualified Bidder to control the price), (b) has reviewed, understands, and accepts the Bid Procedures, and (c) has consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale, or the Auction if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

17.     The Stalking Horse Purchaser is deemed to be a Qualified Bidder and is automatically eligible to participate in the Auction.  In the event of a competing Qualified Bid, all Qualified Bidders will be entitled, but not obligated, to submit Overbids.

18.     The Debtors may (i) determine, in consultation with the Prepetition Secured Lender and the Creditors' Committee (the "**Consultation Parties**"), which Qualified Bid (including the Bid of the Stalking Horse Purchaser) is the highest or otherwise best offer; (ii) reject at any time before the entry of the Sale Order any Bid (other than the Stalking Horse Agreement) that, in the discretion of the Debtors, in consultation with the Consultation Parties, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bid Procedures, or (c) contrary to the best interest of the Debtors,

11

their estates, their creditors, interest holders, or other parties in interest; and (iii) at or before the conclusion of the Auction may impose such other terms and conditions upon Qualified Bidders (other than the Stalking Horse Purchaser) as the Debtors determine, in consultation with the Consultation Parties, to be in the best interest of the Debtors' estates.

19.     No person or entity, other than the Stalking Horse Purchaser, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and, by submitting a Bid, such person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

20.     Unless and until the Stalking Horse Agreement is terminated, no lender to the Debtors will have a right under section 363(k) of the Bankruptcy Code or otherwise to credit bid.

**E.     Assumption and Assignment Notices & Procedures**

21.     The procedures set forth below regarding the assumption and assignment of the executory contracts proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Purchaser (or other Successful Bidder, if any) pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale (the "**Assignment Procedures**") are hereby approved to the extent set forth herein. These Assignment Procedures shall govern the assumption and assignment of all of the Contracts to be assumed and assigned in connection with the Sale, subject to the payments necessary to cure any defaults arising under any such Contracts.

22.     On or prior to **February 28, 2020**, the Debtors shall serve on all non-Debtor counterparties (each a "**Contract Counterparty**" and, collectively, the "**Contract Counterparties**") to any Contract (the "**Cure and Possible Assumption and Assignment Notice**

12

**Parties**") that may be assumed by the Debtors and assigned to the Stalking Horse Purchaser or other Successful Bidder after the results of the Auction, which notice shall be substantially in the form attached hereto as Exhibit 3 (a "**Cure and Possible Assumption and Assignment Notice**"). Also on or prior to February 28, 2020, the Debtors shall provide landlords with adequate assurance information for the Stalking Horse Purchaser. The Cure and Possible Assumption and Assignment Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) the Debtors' good faith estimate of the cure amount (if any) required in connection with the executory contract or unexpired lease, as applicable, (iv) the identity of the Stalking Horse Purchaser (as assignee, if applicable), and (v) the Contract Objection Deadline (as defined below). The presence of a Contract on the Cure and Possible Assumption and Assignment Notice does not constitute an admission that such Contract is an executory contract or unexpired lease, and the presence of a Contract on any notice shall not prevent the Debtors from subsequently withdrawing such request for assumption or rejecting such Contract any time before such Contract is actually assumed and assigned pursuant to the Sale Order.

23.     No later than **March 26, 2020**, the Debtors shall file with the Court and serve on the Cure and Possible Assumption and Assignment Notice Parties who are parties to a Contract to be assumed and assigned a further notice substantially in the form attached hereto as Exhibit 4 (the "**Assumption Notice**"), stating which Contracts may be assumed and assigned, including cure amounts, and providing such parties with the Successful Bidder's assurance of future performance.

24.     Although the Debtors intend to make a good faith effort to identify all Contracts that may be assumed and assigned in connection with a Sale, the Debtors may discover certain

13

executory contracts and unexpired leases inadvertently omitted from the list of Contracts, or Successful Bidders may identity other executory contracts and/or unexpired leases that they desire to assume and assign in connection with the Sale. Accordingly, the Debtors reserve the right, but only in accordance with the Stalking Horse Agreement, or as otherwise agreed to by the Debtors and the Successful Bidder, at any time after the service of the Assumption Notice and before the closing of a Sale, to (i) supplement the list of Contracts with previously omitted executory contracts, (ii) remove Contracts from the list of executory contracts and unexpired leases ultimately selected as Contracts that a Successful Bidder proposes to be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated cure amount associated with any Contract. In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the counterparties to such Contracts and their counsel of record, if any; *provided*, *however*, the Debtors may not add an executory contract to the list of Contracts that has been previously rejected by the Debtors by order of the Court. Each Supplemental Assumption Notice will include the same information with respect to listed Contracts as was included in the Cure and Possible Assumption and Assignment Notice.

25.     Objections, if any, to the cure amount set forth on the Cure and Possible Assumption and Assignment Notice  (each, a "**Contract Objection**") **must** (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, and (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Bankruptcy Court and served on the following parties so as to be actually received on or before **March 18,**

14

**2020 at 4:00 p.m. (prevailing Eastern Time) (the "Contract Objection Deadline")**: (a) counsel for the Debtors, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward (cward@polsinelli.com), and Polsinelli PC, 2950 N Harwood St #2100, Dallas, TX 75201, Attn: Liz Boydston (lboydston@polsinelli.com), (b) counsel for Prepetition Secured Lender, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Garrett Fail (Garrett.fail@weil.com), and Richards, Layton & Finger, 920 N King St. Suite 200, Wilmington, Delaware 1980, Attn: Zachary Shapiro (shapiro@rlf.com), (c) counsel for the Stalking Horse Purchaser, Kayne Law Group, CO., P.A., 612 Park Street, Suite 100, Columbus, Ohio 43215, Attn: Adam L. Smith (asmith@kaynelaw.com) and James E. Rossow Jr., Rubin & Levin, P.C., 135 N. Pennsylvania Street, Suite 1400, Indianapolis, IN 46204 (jim@rubin-levin.net), (d) counsel for the Creditors' Committee, Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10022, Attn: Mark S. Indelicato (mindelicato@hahnhessen.com), and Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Matthew P. Ward (matthew.ward@wbd-us.com), and (e) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2207 – Lockbox #35, Wilmington, DE 19801, Attn: Timothy Fox, Esq. (timothy.fox@usdoj.gov). If a Successful Bidder that is not the Stalking Horse Purchaser prevails at the Auction, then the deadline to object to assumption and assignment solely with respect to the adequate assurance of future performance shall be extended to March 29, 2020 at 4:00 p.m., *provided*, *however*, that the deadline to object to the proposed cure amount shall not be so extended.

26.     If a Contract Counterparty does not timely file and serve a Contract Objection, that party will be forever barred from objecting to (i) the Debtors' proposed cure amount, (ii) the assumption and assignment of that party's executory contract or unexpired lease (including the

adequate assurance of future performance), (iii) the related relief requested in the Motion, and (iv) the Sale. Such party shall be forever barred and estopped from objecting to the cure amount, claiming any other monetary or non-monetary default then exists under the Contract, objecting to the assumption and assignment of that party's executory contract or unexpired lease (including the adequate assurance of future performance), the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Stalking Horse Purchaser or the Successful Bidder, as applicable, for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Stalking Horse Purchaser or Successful Bidder, as applicable, with respect to such party's executory contract or unexpired lease.

27.     Where a Contract Counterparty to an Assigned Contract files a timely Contract Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or objecting to the possible assignment of that Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as the case may be, the Debtors' ability to assign the executory contract or unexpired lease to the Successful Bidder will be determined at the Sale Hearing.

28.     The payment of the applicable cure amount by the Debtors (or a Successful Bidder other than the Stalking Horse Purchaser), as applicable, shall (i) effect a cure of all monetary and non-monetary defaults then existing under the Assigned Contract and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

**F.     Notice of the Sale Process**

29.     The Sale Notice, the Cure and Possible Assumption and Assignment Notice, and the Assumption Notice, in substantially the forms as annexed to this Order as Exhibit 2, Exhibit 3,

16

and Exhibit 4, respectively, and the Bid Procedures Notice, in substantially the forms as annexed to the Motion as Exhibit E, respectively, are hereby approved.

30. Within two (2) business days after the entry of this Order, the Debtors (or their agent) shall serve the Sale Notice by first-class mail upon: (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) counsel to the Prepetition Secured Lender; (d) counsel to the Stalking Horse Purchaser; (e) all other parties who have expressed a written interest in the Assets; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) all state and local taxing authorities with an interest in the Assets; (i) the Attorney General for the State of Delaware; (j) the Securities and Exchange Commission; (k) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (l) all parties known or reasonably believed to have asserted an Interest in the Assets; (m) the Contract Counterparties; (n) the Debtors' insurance carriers; and (o) all parties entitled to notice pursuant to Bankruptcy Rule 2002.

31. As soon as practicable after the entry of this Order, the Debtors shall publish the Bid Procedures Notice in *USA Today*. In addition, as soon as reasonably practicable, but in no event later than three (3) business days after entry of this Order, the Debtors will also post the Sale Notice and this Bid Procedures on the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, located at [http://www.omniagentsolutions.com/LuckysMarket](http://www.omniagentsolutions.com/LuckysMarket). Such publication notice as set forth in the preceding two sentences shall be deemed sufficient and proper notice of the Sale to any other interested parties whose identifies are unknown to the Debtors.

**G.    The Sale Hearing**

32. The Sale Hearing will be conducted on **March 30, 2020 at 3:00 p.m. (prevailing Eastern Time)**. The Debtors will seek entry of an order of the Court at the Sale Hearing approving

17

and authorizing the sale of the Assets to the Successful Bidder. Upon entry of this Order, the Debtors are authorized to perform any obligation intended to be performed prior to the Sale Hearing or entry of the Sale Order with respect thereto. The Sale Hearing may be adjourned from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed on the Court's docket.

## H.    Objections to the Stalking Horse Bid

33.    Objections, if any, to the relief requested in the Motion relating to the Sale of Assets to the Stalking Horse Purchaser, including the assignment of an executory contract or unexpired lease to the Stalking Horse Purchaser and the proposed form of adequate assurance of future performance with respect to such contract or lease (each, a "**Stalking Horse Bid Objection**") must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the Court, and (iv) be served so it is actually received no later than **4:00 p.m. (prevailing Eastern Time) on March 24, 2020**, by (a) counsel for the Debtors, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward (cward@polsinelli.com), and Polsinelli PC, 2950 N Harwood St #2100, Dallas, TX 75201, Attn: Liz Boydston (lboydston@polsinelli.com), (b) counsel for Prepetition Secured Lender, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Garrett Fail (Garrett.fail@weil.com), and Richards, Layton & Finger, 920 N King St. Suite 200, Wilmington, Delaware 1980, Attn: Zachary Shapiro (shapiro@rlf.com), (c) counsel for the Stalking Horse Purchaser, Kayne Law Group, CO., P.A., 612 Park Street, Suite 100, Columbus, Ohio 43215, Attn: Adam L. Smith (asmith@kaynelaw.com) and James E. Rossow Jr., Rubin & Levin, P.C., 135 N. Pennsylvania Street, Suite 1400, Indianapolis, IN 46204 (jim@rubin-levin.net), (d) counsel for the Creditors' Committee, Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10022, Attn: Mark S. Indelicato (mindelicato@hahnhessen.com), and Womble Bond Dickinson (US)

18

LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Matthew P. Ward (matthew.ward@wbd-us.com), and (e) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2207 – Lockbox #35, Wilmington, DE 19801, Attn: Timothy Fox, Esq. (timothy.fox@usdoj.gov).

34.     A party's failure to timely file a Stalking Horse Bid Objection in accordance with this Order shall forever bar the assertion, at the applicable Sale Hearing or otherwise, of any objection to the relief requested in the Motion, or to the consummation of the Sale and the performance of the related transactions, including the transfer of the Assets to the Stalking Horse Purchaser, free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to be a "consent" for purposes of section 363(f) of the Bankruptcy Code.

## I.     Objections to the Sale

35.     Objections, if any, to the relief requested in the Motion relating to the Sale of Assets to the Successful Bidder other than to the Stalking Horse Purchaser (each, a "**Sale Objection**") must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the Court, and (iv) be served so it is actually received no later than **4:00 p.m. (prevailing Eastern Time) on March 29, 2020**, by (a) counsel for the Debtors, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward (cward@polsinelli.com), and Polsinelli PC, 2950 N Harwood St #2100, Dallas, TX 75201, Attn: Liz Boydston (lboydston@polsinelli.com), (b) counsel for Prepetition Secured Lender, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Garrett Fail (Garrett.fail@weil.com), and Richards, Layton & Finger, 920 N King St. Suite 200, Wilmington, Delaware 1980, Attn: Zachary Shapiro (shapiro@rlf.com), (c) counsel for the Stalking Horse Purchaser, Kayne Law Group, CO., P.A., 612 Park Street, Suite 100, Columbus, Ohio 43215, Attn:

Adam L. Smith (asmith@kaynelaw.com) and James E. Rossow Jr., Rubin & Levin, P.C., 135 N. Pennsylvania Street, Suite 1400, Indianapolis, IN 46204 (jim@rubin-levin.net), (d) counsel for the Creditors' Committee, Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10022, Attn: Mark S. Indelicato (mindelicato@hahnhessen.com), and Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Matthew P. Ward (matthew.ward@wbd-us.com), and (e) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Ste. 2207 – Lockbox #35, Wilmington, DE 19801, Attn: Timothy Fox, Esq. (timothy.fox@usdoj.gov).

36.     A party's failure to timely file a Sale Objection in accordance with this Order shall forever bar the assertion, at the applicable Sale Hearing or otherwise, of any objection to the relief requested in the Motion, or to the consummation of the Sale and the performance of the related transactions, including the transfer of the Assets to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to be a "consent" for purposes of section 363(f) of the Bankruptcy Code.

**J.      Other Relief Granted**

37.     Nothing in this Order, the Stalking Horse Agreement, or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

38.     The requirements of Bankruptcy Rules 6004(h) and 6006(d) are waived.

39.     The Debtors are hereby authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

40.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

41.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

42.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: February 26th, 2020**
**Wilmington, Delaware**

21

72322218.5