**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LUCKY'S MARKET PARENT COMPANY, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10166 (JTD)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 13 and 51** |

**FINAL ORDER AUTHORIZING (I) PROCEDURES FOR STORE CLOSING SALES, AND (II) ASSUMPTION OF THE LIQUIDATION CONSULTING AGREEMENT**

Upon the motion (the "**Motion**")[2] of Lucky's Market Parent Company, LLC and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, 365, and 554 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6003, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware for entry of an order (this "**Final Order**") authorizing, but not directing, the Debtors to implement the Store Closing Procedures and conduct or continue conducting liquidation sales (the "**Store Closing Sales**") at the Stores, as applicable, and assume the Liquidation Consulting

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Lucky's Market Parent Company, LLC (2055), Lucky's Farmers Market Holding Company, LLC (5480), Lucky's Market Operating Company, LLC (7064), LFM Stores LLC (3114), Lucky's Farmers Market, LP (0828), Lucky's Farmers Market Resource Center, LLC (7711), Lucky's Market Holding Company 2, LLC (0607), Lucky's Market GP 2, LLC (9335), Lucky's Market 2, LP (8384), Lucky's Market of Longmont, LLC (9789), Lucky's Farmers Market of Billings, LLC (8088), Lucky's Farmers Markets of Columbus, LLC (3379), Lucky's Farmers Market of Rock Hill, LLC (3386), LFM Jackson, LLC (8300), Lucky's Farmers Market of Ann Arbor, LLC (4067), Lucky's Market of Gainesville, LLC (7877), Lucky's Market of Bloomington, LLC (3944), Lucky's Market of Plantation, LLC (4356), Lucky's Market of Savannah, GA, LLC (1097), Lucky's Market of Traverse, City, LLC (2033), Lucky's Market of Naples, FL, LLC (8700), and Sinoc, Inc. (0723).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Agreement and granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and the Interim Order (defined below) having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on January 28, 2020 (the "**Interim Hearing**"); and the Court having entered an order granting the relief requested in the Motion on an interim basis [Docket No. 51] (the "**Interim Order**"); and the Court having held a hearing to consider the relief requested in the Motion on a final basis (the "**Final Hearing**"); and upon the First Day Declaration [Docket No. 47], and the record of the Interim Hearing and the Final Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

    **IT IS HEREBY ORDERED THAT**

    1.    The Motion is granted on a final basis to the extent set forth herein.

72440416.1

2. The Debtors are authorized, but not directed, to conduct or continue conducting Store Closing Sales, as applicable, at the Closing Stores and the Sold Stores pursuant to the store closing sale procedures attached hereto as **Exhibit 1** (the "**Store Closing Procedures**"), which Store Closing Procedures are hereby incorporated by reference and approved in their entirety on a final basis; provided that the Debtors and landlords of any Store are authorized to enter into an agreement modifying the Store Closing Procedures with the consent of the Prepetition Secured Lender without further order of the Court (each, a "**Landlord Agreement**"); provided, further that any such Landlord Agreements shall not have a material adverse effect on the Debtors or their estates. To the extent there is any inconsistency between the Store Closing Procedures, the Liquidation Consulting Agreement, and this Final Order on the one hand, and a Landlord Agreement on the other hand, the terms of the Landlord Agreement shall control.

3. The Debtors may continue conducting Store Closing Sales pursuant to the Store Closing Procedures at the Closing Stores and Sold Stores. The Debtors may conduct Store Closing Sales in accordance with the terms of this Final Order at any stores that the Debtors continue to operate (the "**Operating Stores**", and together with the Sold Stores and the Closing Stores, the "**Stores**") and, after consulting with the Prepetition Secured Lender, subsequently classify as Closing Stores by filing and serving by email or overnight mail the Notice Parties and any affected counterparty at an affected location with (a) notice of intent to conduct a Store Closing Sale pursuant to this Final Order (the "**Notice of Intent**") and (b) a copy of this Final Order (which may be provided electronically via website link). The Notice Parties or affected parties will have five (5) business days from the filing and service of the Notice of Intent to object to the terms of the Store Closing Procedures and request a hearing on the objection. If no objection is filed, the Debtors may conduct Store Closing Sales at such locations, or if an objection is filed, the Debtors

72440416.1

may conduct Store Closing Sales at any locations not subject to such objection, in accordance with the terms of this Final Order, and such stores shall be considered "Closing Stores" for purposes of this Final Order and the Store Closing Procedures.

4. The Store Closing Procedures shall apply to all sales of Store Closing Assets at the Stores. To the extent that there is any inconsistency between the Store Closing Procedures and the Liquidation Consulting Agreement on the one hand, and this Final Order, on the other hand, this Final Order shall control, and the Store Closing Procedures shall control to the extent there is any inconsistency between such procedures and the Liquidation Consulting Agreement.

5. The Debtors and the Liquidation Consultant are authorized, but not directed, to transfer the Store Closing Assets among the Closing Stores as well as among the Debtors' stores which are not Closing Stores. The Debtors and the Liquidation Consultant are authorized to sell or abandon the De Minimis Assets (including any such assets that are Store Closing Assets); provided, that to the extent any such assets remain at the Closing Store after the completion of the applicable Store Closing Sales therein or the effective date of rejection of the underlying lease, such assets shall be deemed abandoned with the right of the landlord (or its designee) to dispose of such property free and clear of all interests and without notice or liability to any party.

6. Pursuant to section 363(f) of the Bankruptcy Code, the Store Closing Assets being sold shall be sold free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code) (collectively, the "**Liens and Claims**"), with such Liens and Claims, if any, to attach to the proceeds of such assets with the same validity and enforceability, to the same

extent, subject to the same defenses, and with the same amount and priority as they attached to such assets immediately before the closing of the applicable sale.

7. No entity, including utilities, landlords, creditors and all persons acting for or on their behalf (but not Governmental Units (as defined in section 101(27) of the Bankruptcy Code)) shall interfere with or otherwise impede the conduct of the Store Closing Sales, or institute any action against the Debtors or landlords in any court (other than in this Court) or before any administrative body which in any way directly or indirectly interferes with, obstructs, or otherwise impedes the conduct of the Store Closing Sales; provided that the Store Closing Sales are conducted in accordance with the terms of this Final Order, the Store Closing Procedures, and any Landlord Agreement.

8. Any restrictions in any lease agreement, restrictive covenant, or similar documents purporting to limit, condition, or impair the Debtors' ability to conduct the Store Closing Sales shall not be enforceable, nor shall any breach of such provisions in these chapter 11 cases constitute a default under a lease or provide a basis to terminate the lease; provided, that the Store Closing Sales are conducted in accordance with the terms of this Final Order, the Store Closing Procedures, and any applicable Landlord Agreement.

9. The Closing Stores may "go-dark" during the Store Closing Sales and remain "dark" despite any lease restriction, real estate local act, local law, or ordinance to the contrary, and any "continuous operation" or similar clause in any of the leases (or any lease provision that purports to increase the rent or impose any penalty for "going dark") may not be enforced (and the "going dark" under such leases shall not be a basis to cancel or terminate the leases), provided that any applicable landlord, at the conclusion of the Store Closing Sales, shall be allowed to enter the applicable Store to dress any windows to minimize the appearance of a dark store.

10. Nothing in this Final Order, the Store Closing Procedures or the Liquidation Consulting Agreement releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order. Nothing contained in this Final Order or in the Liquidation Consulting Agreement shall in any way (a) diminish the obligation of any entity to comply with environmental laws, or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtors in possession under the Bankruptcy Code. The Store Closing Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "**General Laws**"). Nothing in this Final Order shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Final Order shall be deemed to bar any Governmental Unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Final Order, or otherwise. Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

11. To the extent that the Store Closing Sales are subject to any federal, state or local statute, ordinance, or rule, or licensing requirement solely directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Store Closing Sales and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions, or any fast pay laws, that would otherwise apply solely to store closing or liquidation sales (each a "**Liquidation Sale Law**" and together, the "**Liquidation Sale Laws**"), the following provisions shall apply:

   a) If the Store Closing Sales are conducted in accordance with the terms of this Final Order, the Store Closing Procedures and any applicable Landlord Agreement, and in light of the provisions in the laws of many local and state laws that exempt court-ordered sales from their provisions, then the Debtors shall be presumed to be in compliance or otherwise excused from compliance with any Liquidation Sale Laws, and are authorized to conduct the Store Closing Sales in accordance with the terms of this Final Order without the necessity of compliance with any such Liquidation Sale Laws.

   b) The Debtors shall be presumed to be in compliance with any applicable "fast pay" laws to the extent such payroll payments are made by the later of (i) the Debtors' next regularly scheduled payroll and (ii) seven (7) calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

   c) To the extent there is a dispute arising from or relating to the Store Closing Sales, this Final Order, the Liquidation Consulting Agreement, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "**Reserved Dispute**"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten (10) days following entry of a final order approving the Store Closing Procedures, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtors so as to ensure delivery thereof within one (1) business day thereafter. Debtors shall notify applicable landlords of any Reserved Dispute. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the notice, the aggrieved party may file a

72440416.1

        motion with this Court requesting that this Court resolve the Reserved Dispute (a "**Dispute Resolution Motion**").

    d)     In the event a Dispute Resolution Motion is filed, nothing in this Final Order shall preclude the Debtors, a Landlord, or other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of this Final Order nor the conduct of the Debtors pursuant to this Final Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of any Order or to limit or interfere with the Debtors' or the Liquidation Consultant's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Final Order, absent further order of this Court. The Court grants authority for the Debtors and the Liquidation Consultant to conduct the Store Closing Sales pursuant to the terms of this Final Order and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Final Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

    e)     If, at any time, a dispute arises between the Debtors and/or the Liquidation Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (c) and (d) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

12.    The Debtors shall be entitled to use sign walkers, hang signs, or interior or exterior banners advertising the Store Closing Sales in accordance with the Store Closing Procedures and any applicable Landlord Agreement, without further consent of any person. If the use of banners and sign walkers is done in a safe and responsible manner, then such sign walkers and banners, in and of themselves, shall not be deemed to be in violation of General Laws.

13.    Subject to paragraphs 11 and 12 above, each and every federal, state, or local agency, departmental or governmental unit with regulatory authority over the Store Closing Sales

and all landlords and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Final Order as binding authority to conduct and advertise the Store Closing Sales in accordance with this Final Order.

14.     State and local authorities shall not fine, assess, or otherwise penalize the Debtors or any of the landlords of the Stores for conducting or advertising the Store Closing Sales in a manner inconsistent with state or local law; provided, that the Store Closing Sales are conducted and advertised in a manner contemplated by this Final Order.

15.     Nothing in this Final Order in any way limits the Debtors' ability to (a) seek assumption, assignment, or rejection of the Stores' leases, (b) determine that additional stores should be closed and Store Closing Sales or the like be conducted in advance thereof, and (c) abandon assets in connection with Store Closing Sales, lease rejections, or otherwise, and the Debtors' rights are fully reserved in these regards.

16.     All of the Store Closing Sales shall be "as is" and final. However, as to the Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of such goods or the use of the terms "as is" or "final sales." As to the Stores, the Debtors shall accept return of any goods purchased during the Store Closing Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund; provided that the consumer must return the merchandise within seven (7) days of purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. Returns, if permitted, related to the purchase of Store Closing Assets shall not be accepted at stores that are not participating in the Store Closing Sales.

17. To the extent that the Debtors propose to sell or abandon any De Minimis Assets which may contain personal and/or confidential information about the Debtors' employees and/or customers (the "**Confidential Information**"), the Debtors shall remove the Confidential Information from such De Minimis Assets before such sale or abandonment.

18. The Debtors are directed to remit all taxes arising from the Store Closing Sales to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. This Final Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

19. With respect to any De Minimis Assets (including any such assets that are Store Closing Assets) abandoned at one of the Debtors' leased properties, the applicable landlord or other designee shall be free to dispose of such property without liability to any party and without further notice or order of the Court.

20. The Debtors are authorized to pay those reasonable and necessary fees and expenses incurred in the sale, transfer, or abandonment of the De Minimis Assets, including reasonable commission fees to agents, brokers, auctioneers, and liquidators, if any.

21. The Liquidation Consulting Agreement, a copy of which is attached hereto as **Exhibit 2,** is operative and effective on a final basis. The Debtors are authorized to continue to act

and perform in accordance with the terms of the Liquidation Consulting Agreement, including to make all payments to the Liquidation Consultant as and when due.

22. All amounts payable to the Liquidation Consultant under the Liquidation Consulting Agreement on account of fees earned or reimbursable expenses incurred between the Petition Date and the date that a final order on the Motion is entered shall be payable to the Liquidation Consultant without any further order of the Court provided that Great American shall provide invoices to the Debtors, any official committee appointed in these chapter 11 cases, and the Prepetition Secured Lender when such compensation becomes due and owing. Such parties shall have five (5) business days to dispute any such invoice, which dispute shall be decided by the Court unless resolved by the parties.

23. Subject to the terms of this Final Order and the proposed Store Closing Procedures, the Debtors and the Liquidation Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Liquidation Consulting Agreement and all other actions authorized by this Final Order, and any actions taken by the Debtors and the Liquidation Consultant necessary or desirable to implement the Liquidation Consulting Agreement or the Store Closing Sales prior to the date of this Final Order, are hereby approved and ratified.

24. On a confidential basis and upon the written request (including email) of the Prepetition Secured Lender, the U.S. Trustee, and any official committee appointed in these Chapter 11 Cases, the Debtors shall provide such party with copies of periodic reports concerning the Store Closing Sales that are prepared by the Debtors, their professionals, or the Liquidation Consultant; provided that the foregoing shall not require the Debtors, their professionals, or the Liquidation Consultant to prepare or undertake to prepare any additional or new reporting not

otherwise being prepared by the Debtors, their professionals, or the Liquidation Consultant in connection with the Store Closing Sales.

25. Notwithstanding the relief granted in this Final Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the applicable budget and the Debtors' authorization to use cash collateral.

26. <u>ATA Forum Objection</u>.  ATA Forum Louisville KY, LLC ("**ATA Forum**") filed a timely objection [Docket No. 216] (the "**ATA Forum Objection**") with respect to the Motion and the Interim Order. ATA Forum, as landlord, and Debtor Lucky's Farmers Market of Louisville, LLC ("**Louisville Debtor**"), as tenant, are parties to a Shopping Center Lease dated as of July 30, 2013 (the "**Louisville Lease**"), pursuant to which ATA Forum leased to Louisville Debtor certain retail space in Louisville, Kentucky (the "**Subject Leased Premises**"). As stated in the ATA Forum Objection, ATA Forum asserts, among other things, that the Debtors and/or the Liquidation Consultant have (i) improperly removed from the Subject Leased Premises fixtures and other property which are owned by ATA Forum, and (ii) caused significant damage to the Subject Leased Premises in the process of removal. The Debtors dispute ATA Forum's contentions.  To resolve the ATA Forum Objection as it relates to the entry of this Final Order, the Debtors and ATA Forum have stipulated and agreed to the provisions of this Paragraph, and such provisions are hereby approved and shall be binding and enforceable.

    a. Notwithstanding anything to the contrary in the Motion, the Interim Order, this Final Order, the Store Closing Procedures or the Liquidation Consulting Agreement, all of ATA Forum's administrative claims, other claims, rights and interests in and relating to the following are fully reserved and not limited or otherwise affected: (i) all fixtures and other property that were located at, or removed from, the Subject Leased Premises (and all

72440416.1

proceeds therefrom), including, without limitation, all claims relating to ownership or other rights in such property, and (ii) the removal of such property from the Subject Leased Premises and/or the damage to the Subject Leased Premises caused by representatives of the Debtors or the Liquidation Consultant.

b. Notwithstanding anything to the contrary in the Motion, the Interim Order, this Final Order, the Store Closing Procedures, or the Liquidation Consulting Agreement, the Parties agree that the Debtors and the Liquidation Consultant fully reserve all rights, objections, and challenges to any claim asserted by ATA Forum, including causes of action and counterclaims for damage to the Subject Leased Premises caused by representatives of ATA Forum.

27. Comcast. Notwithstanding anything to the contrary in this Final Order, the Debtors and the Liquidation Consultant are not authorized to, and shall not, sell the modems, ACA equipment (an electronic device used in the provision of voice over internet phone services), telephones, and any other equipment provided by Comcast Cable Communications Management, LLC and its affiliates (collectively, "**Comcast**") but excluding any inside wiring located in the Debtors' leased premises and headquarters (the "**Comcast Equipment**"). Further, notwithstanding anything to the contrary contained in this Order, the Debtors or the Liquidation Consultant shall inform Comcast via email sent to Comcast's counsel at summersm@ballardspahr.com and Comcast at Daniel_Carr2@comcast.com with respect to any dark location in which Comcast Equipment is located within five (5) business days of entry of this Final Order of a proposed date and time, which date and time shall be prior to surrender of the leased premises to the applicable landlord or turnover of such premises to any assignee of the lease for the leased premises, at which time Comcast may retrieve the Comcast Equipment. With respect to the Debtors' headquarters,

Debtors or the Liquidation Consultant shall inform Comcast via email sent to Comcast's counsel at summersm@ballardspahr.com and Comcast at Daniel_Carr2@comcast.com at least five (5) business days prior to the earlier of the date on which the Debtors intend to cease operations or surrender possession of the Debtors' headquarters of a proposed date and time, which date and time shall be prior to surrender of the Debtors' headquarters to the applicable landlord or turnover of such premises to any assignee of the lease for the Debtors' headquarters, at which time Comcast may retrieve the Comcast Equipment. The Debtors shall cooperate with Comcast to allow Comcast to retrieve the Comcast Equipment at the designated time or such other time as Comcast and the Debtors or Consultant may agree. To the extent applicable, the automatic stay is hereby modified pursuant to section 362(d)(1) to permit Comcast to take the actions permitted and implement the relief granted in this paragraph. Nothing herein shall alter, amend, modify, or waive Comcast's rights and remedies under the MSA, including the SOWs (as those terms are defined in Comcast's Limited Objection to the Motion) or applicable law, all of which rights are expressly preserved.

28. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

29. Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

30. Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

31. The Debtors shall serve this Final Order within two (2) business days of its entry on the Notice Parties.

32. The Debtors are authorized to take all actions necessary to implement the relief granted in this Final Order.

72440416.1

33. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Final Order.

Dated: March 3rd, 2020
Wilmington, Delaware

JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

72440416.1